W. Willard WIRTZ, Secretary of Labor,
United States Department of Labor,
Appellant,

v.

The FLORIDICE COMPANY, Inc., et al.,
Appellees.

No. 21798.

United States Court of Appeals
Fifth Circuit.

July 3, 1967.

Rehearing Denied Aug. 21, 1967.

Bessie Margolin, Associate Sol., Charles Donahue, Sol., Robert E. Nagle, Bobbye D. Spears, Joel Chasnoff, Attys., Dept. of Labor, Washington, D. C., Beverley R. Worrell, Regional Atty., for appellant.

T. Paine Kelly, Jr., Charles W. Pittman, of Macfarlane, Ferguson, Allison, Kelly & Himes, Tampa, Fla., for appellees.

Before TUTTLE, Chief Judge, and BELL and GOLDBERG, Circuit Judges.

TUTTLE, Chief Judge:

The Secretary of Labor brought suit under the Fair Labor Standards Act (29 U.S.C.A. Sec. 201 et seq.) to restrain The Floridice Company, its principal officers, and others,[1] from violating certain of the Act's provisions, and to compel Floridice to pay, for the benefit of vari-

---

1. Because of the similarity of facts and issues between this case and the case of Wirtz v. Hillsboro Ice Company, counsel stipulated that the testimony elicited for each case, to the extent relevant, would be equally applicable to the other

ous of its employees, certain amounts alleged to be due as unpaid minimum wages and overtime compensation.

The case was tried to the court without a jury, and the sole issue considered by the district judge was whether Floridice is an establishment "seventy-five percentum of whose annual volume of sales of goods or services (or both) is not for resale and is recognized as retail sales or services in the particular industry," so as to qualify it for exemption under Section 13(a) (2) and (4) of the Act.[2]

The basic facts concerning the sales of ice made by Floridice are not in dispute. Defendants introduced the following summary (*sans* percentages) of sales for the period January 1, 1960 through August 31, 1963:

| Year | Total Sales | Breweries | Shrimp Boats | Shrimp Houses | Ice Companies & Peddlers | Platform Sales |
|------|-------------|-----------|--------------|---------------|--------------------------|----------------|
| 1960 | $82,150 | $37,615 | $18,681 | $5,116 | $10,216 | $10,520 |
| 1961 | 84,570 | 44,071 | 17,587 | 4,820 | 9,339 | 8,751 |
| 1962 | 89,692 | 43,271 | 21,304 | 4,200 | 11,826 | 7,080 |
| 1963 | 55,861 | 25,687 | 11,498 | 3,737 | 10,698 | 4,238 |

Approximate percentage of average annual sales:

| 100% | 48% | 22% | 5% | 15% | 10% |

From this summary, it is evident that, on the average, approximately seventy per cent of defendant's annual dollar volume of sales of ice represented sales to breweries (used primarily for icing railroad cars carrying shipments of beer), and to shrimp boats (each boat requiring an average of twenty-eight to thirty tons of ice per delivery). The true dispute was whether these sales met the statutory test of being "recognized as retail sales" in the ice industry.

To establish the critical proposition that they were so recognized, Floridice called to the stand a number of members of the industry, each of whom testified that all sales of ice not for resale are recognized as retail sales in the ice industry.

To rebut this testimony, the Secretary offered in evidence a bulletin prepared by the Department of Labor, published in 29 C.F.R. § 779.357, which contained the Wage-Hour Administrator's determination as to what sales were recognized as retail sales in the ice industry, and the testimony of a witness who was chief of the office charged with advising the Administrator on the application of the Act's exemptions at the time the ice industry determinations were made, regarding the studies conducted and the conclusions reached in arriving at that determination. The bulletin states that in the ice industry all sales are regarded as retail except:

(a) Sales for resale.

(b) Sales of ice for icing railroad cars. * * *

(c) Sales of ice in railroad car lots.

(d) Sales of ice of a ton or more.

case, and a notice of appeal filed by the Secretary in the *Hillsboro* case was dismissed by stipulation. For convenience, references in this opinion will be limited to Floridice.

2. The Secretary has not argued that the district court erred in determining that

Floridice met each of the other conditions requisite to establish its claim to exemption under § 13(a) (2) and (4). Only the finding that "more than 75% of defendant's annual dollar volume of sales is recognized as retail sales in the ice industry" is challenged.

(e) Sales of ice at a price comparable to that charged by the establishment to dealers. * * *

Under these guidelines, it is quite plain that less than the requisite seventy-five per cent of the sales made by Floridice would be "recognized as retail," since an average of eighty-five per cent of its sales fall under exceptions (a), (b), and (d) above.

■ The trial court, however, refused to follow these guidelines. Instead, it ruled the bulletin inadmissible,[3] and took as controlling the industry's "any sale not for resale is retail" usage, evidenced by the testimony of Floridice's witnesses. On that basis, it awarded judgment in favor of the defendants.

The Secretary contends that reversal of that judgment is required by the intervening decision of the Supreme Court in the case of Wirtz v. Steepleton General Tire Co., reported *sub nom* Idaho Sheet Metal Works, Inc. v. Wirtz, 383 U.S. 190, 86 S.Ct. 737, 15 L.Ed.2d 694 (1966). His argument is, we think, well taken.

The *Steepleton* case involved a tire company, many of whose sales were made at special prices to commercial fleet operators. The Company claimed, as defendants do here, that all sales not for resale were recognized in their industry as retail, regardless of quantity or price. Numerous witnesses so testified, and both the district court and the Court of Appeals gave controlling weight to this evidence of industry usage, rejecting the contrary classifications set forth in the guidelines covering the tire industry.

In reversing, the Court said: "The approach of the Sixth Circuit [in *Steepleton*], which took industry usage as controlling, and that of the Ninth Circuit [in *Idaho Metal*], which rejected it as the sole test, represent irreconcilable interpretations of the critical statutory language. While support can be mustered for both views, we believe the Ninth Circuit is correct * * *. After rejecting the industry's usage as controlling, we face the further difficult question of what criteria do determine when business transactions are retail under the Act * * *."

In formulating an answer to that "further difficult question," the Court made it clear that quantity and price discount

3. In so ruling, the district court no doubt had in mind this Court's decision in Mitchell v. City Ice Company, 273 F.2d 560 (5th Cir. 1960). There, we affirmed the action of the trial court in refusing to admit the offered bulletin because "It was tendered in evidence to be considered by the jury in passing on an issue as to which it is completely silent: 'what is considered in the industry to be retail?'" 273 F.2d at 562. Two things distinguish this case from *City Ice*. First, the Secretary's bulletin has been revised to meet the deficiency noted there and clarify any doubt about its official interpreting status. It now states:

"In these industries the Divisions have made special studies, held hearings or consulted with representatives of industry and labor, to ascertain the facts. Based upon these facts the following determinations have been made as to which sales or establishments are, and which are not, recognized as retail in the particular industry." [29 CFR 779.354]

Second, *City Ice* involved a jury trial. The court carefully noted that "It [the bulletin] is not offered as a guide to the court in construing the statute. Cf. Skidmore v. Swift & Co., 323 U.S. 134, [65 S.Ct. 161, 89 L.Ed. 124] * * *." Since the bulletin as revised does address itself to the dispositive issue, and since the trial court was not here faced with the complications created by a jury's presence, it could without difficulty, have treated the Secretary's interpretive bulletin as a persuasive guide to the construction and application of the Act's provisions. Clearly, in the light subsequently shed by the Supreme Court's decision in Wirtz v. Steepleton General Tire Co., reported *sub nom.* Idaho Sheet Metal Works, Inc. v. Wirtz, 383 U.S. 190, 86 S.Ct. 737, 15 L.Ed.2d 694 (1966), it should have done so.

We need not now decide the difficult question whether the principles announced in *Steepleton* would require, if a jury were present, that the bulletin offered by the Secretary be actually received in evidence, or whether it would find more appropriate service as a guide to the trial judge in framing his charge to the jury.

are of high importance among the factors relevant to the question whether a given sale is or is not a "retail" one under the Act. It said: "Within the category of goods and services that can be sold at retail, naturally not every sale can be so classified. The exemption itself excludes any sale for resale *and beyond that, references in the legislative history * * * and common parlance certainly suggest that term retail becomes less apt as the quantity and the price discount increase in a particular transaction."* 383 U.S. at 204, 86 S.Ct. at 746. (Emphasis added.)

Examining *Steepleton* in the light of these principles we find that the Court rejected the Government's first contention that the tire transactions relating to large trucks and industrial vehicles are intrinsically nonretail whatever the terms. It then said:

> "Steepleton is, nevertheless, deprived of retail establishment exemption because—as the Government alternatively contended—*it has failed to show that the tire dealings in question were made on terms and in circumstances that qualify them as retail within the Secretary's guidelines.* The guidelines class as nonretail all sales to fleets of five or more vehicles at 'wholesale prices,' a wholesale price being defined as that charged on sales for resale or on sales to 10-vehicle fleets. * * * *These guidelines, reportedly designed after inquiry into industry practices, are quite evidently aimed at excluding from the retail category sales generally made at significant discounts and in quantity.* Given the common conception of the term retail and references in the legislative history to discount sales * * we see no reason not to sustain these guidelines * * *."* Id. at 208, 86 S.Ct. at 748 (Emphasis added).

The record before us shows that in addition to sales admittedly for resale averaging approximately fifteen percent of its annual dollar volume nearly one-half of defendants' sales were made to breweries for the purpose of icing railroad cars requiring up to eight tons of ice each, at prices even lower than those charged for wholesale sales to ice dealers. Another substantial portion of defendants' sales—averaging some twenty-two percent—were made to shrimp boats, delivered in amounts up to thirty tons each at prices comparable to those charged wholesale dealers. All of these sales, constituting approximately eighty-five percent of the total dollar volume of sales of ice made by defendants, are clearly excluded from those sales recognized as retail in the ice industry under the Secretary's guidelines. These guidelines, too, are "quite evidently aimed at excluding from the retail category sales generally made at significant discounts and in quantity." Like the Supreme Court in *Steepleton*, we find no good reason not to sustain them in this case.

The judgment is reversed, and the case is remanded to the district court for further proceedings not inconsistent herewith.