THE STATE OF MISSOURI, Respondent, v. THOMAS RICHESON and CHARLES K. VICKERS, Appellants.

1. *Criminal law — Dealing as merchant — Definition of merchant.* — One who manufactures and supplies goods to the previous orders of his customers alone, although he keeps on hand, but not for sale, the materials from which the manufactured articles are produced, is not a merchant within the meaning of the statute (Wagn. Stat. 937, § 1). (State v. West, 34 Mo. 424.)

2. *Criminal law—Information for dealing as merchant without license—What dealings constitute a merchant—Burden of proof on defendant, to show what.* In an action by the State against one engaged in the manufacture of white lead, for exercising the trade and business of a "merchant without license," the State would make out a *prima facie* case by showing that defendant, after receiving orders from his customers, filled them the same and succeeding

days. The natural inference would be that he kept the articles on hand; and to rebut this inference it was not sufficient to show that he *might* have manufactured the lead after the orders were received, but he should have shown that he did so manufacture it.

*Appeal from St. Louis Court of Criminal Correction.*

*Cline, Jamison & Day*, for appellants.

I. "To be a merchant, in the sense of the law, the dealer must have on hand goods, wares, and merchandise ready for sale and present delivery, and must also actually deal in the selling of the same." (The State v. Whittaker, 33 Mo. 457; The State v. West, 34 Mo. 424; R. C. 1855, p. 409, §§ 1, 2.)

II. The presumption of innocence runs in favor of the accused, and remains until overcome by competent proof; and there is no evidence in this case that the Collier White Lead Company ever delivered any white lead on an order that could not be manufactured for the customer after the order had been given, and before the lead was delivered.

*H. B. Johnson*, Attorney-General, with *Colcord & Farney*, for respondent, cited R. C. 1865, ch. 93, § 1; State v. Whittaker, 33 Mo. 457; State v. West, 34 Mo. 427; 37 Mo. 192; State v. Jacobs, 38 Mo. 379; State v. Cox, 32 Mo. 566; 27 Mo. 344, 464; 26 Mo. 171; State v. Brown *et al.*, 8 Mo. 210; State v. Hunter, 5 Mo. 360; State v. Martin, *id.* 361; Tracy *et al.* v. State, 3 Mo. 3; 43 Mo. 179; 2 Bouv. Law Dic.; Gen. Stat. 1865, p. 409, § 3.

BLISS, Judge, delivered the opinion of the court.

Defendants were prosecuted by information for exercising the trade and business of merchants without license; and it was shown that they were officers and agents of the Collier White Lead and Oil Company, a St. Louis corporation engaged in the manufacture of white lead. The evidence failed to show that the manufactured article was kept on hand and exposed for sale by the company, but it did show that its agents were in the habit of receiving orders at the manufactory from wholesale dealers,

entering them upon the order-book, and subsequently delivering the lead. The witnesses gave different periods of time between the orders and the delivery; but one testified that he was in the habit of giving his orders in the morning, and received the lead the same or the next day. To rebut this testimony, the defendants showed that it took some ninety days to carbonize the virgin pig-lead, and some twenty-four hours to dry and pulverize it; that the factory kept on hand, at all times, a million pounds of carbonized lead, and the necessary cooperage; and that an order for a ton of white lead could be filled in two hours, as it was made by grinding the carbonized lead with tiff and oil.

The court, at the instance of the defendants, held as declarations of law that if the company for whom they acted, or if the defendants themselves, were engaged in manufacturing white lead upon written or verbal orders, and "did not at any time keep on hand for sale, or offer or expose for sale, or sell, any white lead that was manufactured and complete or ready for delivery at the time the same was ordered," then defendants were not merchants, and it did not matter if the company had on hand large amounts of carbonized lead, tiff, and oil, out of which to manufacture the white lead to fill the orders. The substance of this position was held by the court in three declarations of law, but the court refused to make the following: "Before the State can convict in this case, it must establish beyond a reasonable doubt that the defendants exercised the business of merchants in the city and county of St. Louis; that is to say, they must be shown to have kept on hand ready-manufactured white lead for sale, or to have sold the same, ready-made, at their factory or place of business; and that the burden of establishing these facts is upon the State; and they can not be inferred from the mere fact that orders were left at the factory for white lead, which were subsequently filled." To this refusal the defendants excepted, and the court finding them guilty, they appeal.

The statute (Wagn. Stat. 937, § 1) defines a merchant as follows: "Every person, or co-partnership of persons, who shall deal in the selling of goods, wares, or merchandise, including clocks, at any store, stand, or place occupied for that purpose, is

37—VOL. XLV.

declared to be a merchant." So that it does not matter whether a person buys and sells, as merchants ordinarily do, or manufactures and sells; if he "shall deal in the selling" at any particular place, he is a merchant. (See State v. Whittaker, 33 Mo. 457.) But this court decided in State v. West, 34 Mo. 424, that a tailor who kept cloth on hand from which to make clothing, and only made it up for the personal use of his customers, and not for sale, was not a merchant under this statute.

In the case at bar, the court conceded everything to defendants so far as the interpretation of the statute is concerned, and must have adopted not only the principle of the case of State v. West, but also to the full extent the opinion of Judge Dryden, who declares that " to be a merchant in the sense of the law, the dealer must have on hand goods, wares, and merchandise ready for sale and present delivery, and must actually deal in the selling of the same. One who manufactures and supplies goods alone to the previous order of his customers, although he keeps on hand, but not for sale, the materials from which the manufactured articles are produced, is not a merchant within the meaning of the statute." It may be said that there is no difference in principle between filling orders with the manufactured lead kept on hand for that purpose, and mixing and grinding out the manufactured materials after the orders come in. Perhaps not, but the defendants received the benefit of this distinction, and they can not complain of it.

The only question, then, raised by the record pertains to the evidence. To make the declarations of law consistent with the finding, the court must have held that the State made a *prima facie* case; that it was sufficient to show that the defendants, after receiving orders from their customers, filled them the same and succeeding days; that the natural inference would be that they kept the article on hand. And to rebut this inference it was not sufficient to show that they *might* have manufactured the lead after the orders were received, but they should have shown that they did so manufacture it.

The State must always make out a case. The accused must be presumed innocent until the facts necessary to establish guilt

are shown beyond a reasonable doubt. But the evidence which should be held sufficient to show these facts must depend upon the circumstances of each case. The State is not required to perform impossibilities. It is often prevented by the nature of the transaction, or by circumstances surrounding it, from proving directly the offense charged, in which case it is sufficient to establish facts that imply guilt, and the defendant is required to explain them. For instance, in a charge of larceny, if the stolen goods are found upon the prisoner he may have come honestly by them, but the presumption against him, or the reasonable inference from the fact, is so strong that he is properly required to show how he obtained them. The State can not show it, he can. And in the case at bar, I know not how the State could have done more than it did. The goods of defendants are not publicly exposed for sale, nor is it necessary that they should be in order to constitute them merchants. If they are sold by sample, or from knowledge of their character, they may well be kept in the private warehouse until orders are received. The purchaser does not know, outsiders do not know, no one knows but the defendants and their employees, whether each order is filled by grinding out the amount, or whether the article is kept on hand ready for delivery, or whether some orders are filled in one way and some in the other. It was in defendants' power to explain the matter, and a sufficient presumption was raised to require them to do it. But they contented themselves with showing the immaterial fact that after receiving the orders there was time enough before filling them to manufacture the lead. We have nothing to say upon the suggestions of defendants' counsel as to the impolicy of taxing manufacturers as merchants. We can only be asked to give the law a fair construction, and the language of the court above quoted in The State v. West, adopted by the judge who tried this case, goes to the very verge of a reasonable interpretation in favor of the manufacturer.

The other judges concurring, the judgment will be affirmed.