KANSAS CITY, Missouri, a Municipal Corporation, Appellant,

v.

MANOR BAKING COMPANY, a Corporation, Respondent.

No. 23848.

Kansas City Court of Appeals.

Missouri.

Feb. 3, 1964.

Herbert C. Hoffman, City Counselor, M. E. Benson, L. B. Saunders, Asst. City Counselors, Kansas City, for appellant.

Robert D. Youle, Ronald G. Schmidt, Lathrop, Righter, Gordon & Parker, Kansas City, for respondent.

BROADDUS, Presiding Judge.

In the years, 1953, 1956, 1957, 1958 and 1959, defendant Manor Baking Company, which maintained in Kansas City, Missouri, a baking plant producing bakery products, sold within and without Missouri, applied for and was issued by plaintiff City occupational licenses as a retailer, computed at rates and upon the measure of gross receipts applicable to retailers. This action was brought by the City to recover the sum of $9,050.27, being the difference between the occupational license fees paid, and the occupational license fees which the City contends should have been paid by defendant for licenses for the privilege of manufacturing within the City.

The trial court found that "defendant's primary and predominant business endeavor and its principal business or occupation is as a merchant, and that within the city ordinances in effect from time to time defendant Manor Baking Company is properly classified as a 'retail or wholesale baker' and is not within the scope of ordinance provisions applicable to manufacturers.'" From a judgment based upon that finding plaintiff City appeals.

From the above it is to be seen that the question presented here is whether defendant was a "manufacturer," as appellant contends, or whether it was a "merchant baker," as defendant asserts.

It must not be assumed that defendant has ignored its financial obligations to the City. Rather in all years here involved it filed returns, reported the amount of gross receipts it believed the taxing ordinances legally reached and paid heavy occupational license taxes, a total of $21,057.09. It also paid real and personal property taxes, ad valorem taxes, license taxes on a fleet of 277 trucks and many other taxes.

Before discussing the facts we note that there is a statutory definition of merchant. R.S.Mo. (1949), Section 150.010, V.A.M.S., provides:

"Every person, corporation, copartnership or association of persons, who shall deal in the selling of goods, wares and merchandise at any store, stand or place occupied for that purpose, is declared to be a merchant. *Every person,* corporation, copartnership or association of persons doing business in this state *who shall, as a practice in the conduct of such business, make or cause to be made any wholesale or retail sales of goods,* wares and merchandise to any person, corporation, copartnership or association of persons, *shall be deemed to be a merchant* whether said sales be accommodation sales, whether they be made from a stock of goods on hand or by ordering goods from another source, *and whether the subject of said sales be similar or different types of goods than the type, if any, regularly manufactured, processed or sold by said seller.*" (Emphasis added)

Appellant interprets Manor's charter provisions as showing it is a manufacturer. True, the quoted provisions show it has broad purpose clauses and powers as do most business corporations. But it is not the purpose of its charter, but *how it in fact operates* which determines the busi-

ness in which it is engaged and hence how the City may lawfully license it. For example, as quoted by the City, Manor is authorized to own and operate factories "for the production of *raw materials* * * *" and to operate chemical and testing laboratories. Yet in fact Manor does none of these things and hence has no need for a license for them. And in addition to the provisions relied upon by the City Manor is also authorized to "buy, *sell at wholesale or retail* * * * and otherwise deal in * * * bakery and food products * * *." This is in fact its business—its principal activity.

Thus, Manor's corporate authority is entirely consistent with its contention that it is predominantly a merchant, although producing perishable food products to meet its sales needs and because of lack of other source of supply. At least 50% of Manor's sales are from its *retail* door-to-door sales of bakery goods at retail prices by its own direct employees under union contract. Another 3% of its sales are made through seven retail stores operated by Respondent, four in Kansas City, Missouri, city limits. The remainder of its sales are at wholesale to its distributors, for their *retail* door-to-door sale.

The Stipulation of Facts fully supports Manor's classification as a merchant. While it operates a baking plant, it also operates two distribution substations, seven retail stores, and sells in four states by means of a large force of *retail door-to-door salesmen*. Its plant produces "highly perishable" bakery goods and Manor deals only in such goods. Such bakery goods are produced "daily" for Manor's own sale requirements and not upon prior orders, are delivered by Manor's employees or distributors to its *retail customers daily;* if not currently sold, goods become "stales" and are returned to Manor for salvage sale.

Manor handled its own sales and distribution, selling such bulky, perishable goods in the feasible market area by means of a force of several hundred employees. All Manor bakery goods are *sold at retail,* door-to-door to housewives, never in stores (except its own salvage stores) by driver-salesmen under union contract or by distributors. Manor had a sales force of 570 persons compared to 200 engaged in the baking process, and over 53% of its expense of operation was in the distribution and selling end of the business compared to 42% in production which includes all production labor and costs of ingredients. Within the metropolitan area alone Manor had 190 retail door-to-door routes, served by 136 driver employees accounting for 50% of its sales as well as 171 retail routes elsewhere served by 93 distributors in Missouri and 172 driver employees and distributors in Kansas. Manor owned and operated in handling its retail distribution 277 motor vehicles, i. e., 173 retail delivery trucks in Missouri and 92 in Kansas and 12 large transports. Its distributors owned and operated another 171 similar retail trucks.

Is this a manufacturer's mode of operation? We think the answer is clearly in the negative.

Manor always sold solely for its own account, and its "production" or baking of bread and pastries was *never* upon advance order of its customers, was *never* for "other than a single day's stock" and the products were not packaged as to be susceptible of storage or warehousing. All stales were returned for full credit, so it bore the full sales risk.

This illustrates that the heavy end of Manor's effort, the success of its business venture and the essence of its operation, was selling or merchandising. Its production was incidental—necessary because such goods must be baked or produced to be fresh and available for its sale. But in selling it was not doing so to realize a production or manufacturer's profit—had the perishable goods remained in its pos-

session even for a single day there would have been no profit, no commercially successful venture. Rather, it merchandised, and realized its profit and success from perishable, bulky, edible goods which it had to produce for freshness required to effect sales of such foodstuff. Truly, its predominant activity in number and effort of employees, in method of total operation, in source of profit, was as a merchant.

Appellant's long time administrative classification of Manor is to the same effect. In all of the years involved, the applications for *yearly licenses provided and sent by the City to Manor classified it as* "Baker-R" (Baker-Retail) both as to its main operation and its salvage stores. The licenses actually issued through 1959 also classified Manor as "Baker-R." Appellant never attempted to classify Manor as other than a retail bakery and repeatedly acknowledged this as its classification. Further, in 1958 and 1959, when the tax rate for *merchant bakers* was higher than for manufacturers, Manor completed application forms by showing the gross receipts which it believed properly subject to inclusion *opposite the mercantile classification,* and paid tax at the $1.00 rate for retail and wholesale bakeries, rather than at the 85¢ rate for manufacturers.

We think it clear that Manor conducts a predominantly mercantile endeavor, processing ingredients only by necessity from the character of its product. Its reporting on this basis has been clear and consistent and the long administrative practice of the City supports this as Manor's proper classification.

And under Missouri case law Manor is not a manufacturer. In State of Missouri v. Whittaker, 33 Mo. 457, under a statute identical to the first sentence of present Section 150.010 quoted above, defendant was indicted for dealing as a merchant and selling one thousand hams, *without a merchant's license.* Defendant was a meat packer, purchased and butchered hogs and cured hams, some of which he sold at his place of business. The defendant asked an instruction that if he was a packer (e. g. a manufacturer of meat products) and incidently sold meat products, he could not be convicted for failure to have a *merchant's license.* The court stated 33 Mo. l. c. 459:

"It is immaterial that the defendant, by his labor, changed the form of the goods sold. If he dealt in selling them at a store, stand or place occupied for that purpose, he is a merchant (for the purpose of this act); *and it is also immaterial that the store, stand or place may have been occupied for some other purpose.*"

In Kansas City v. Ferd Heim Brewing Co., 98 Mo.App. 590, 73 S.W. 302, under a similar statutory and charter definition of merchant, Kansas City sued the defendant corporation for merchants' taxes. Defendant denied liability claiming it was a manufacturer and "was not engaged in the business of a merchant." The court reversed a trial court judgment for defendant, saying 73 S.W. l. c. 303:

"It will be seen by these decisions that a *manufacturer may or may not be a merchant within the meaning of the charter* and the statute of the state. If he keeps at a store, stand, or other place, in stock, articles manufactured by him for sale in the ordinary course of trade, he is a merchant. *If he only manufactures upon order, he is not a merchant. It is, therefore a mixed question of law* and fact whether a manufacturer is or is not a merchant. * * *" (Emphasis added)

A criterion of who is a manufacturer as distinguished from a merchant has been held to be that of production and sale of goods on *previous order.* State v. West, 34 Mo. 424, 428; State v. Richeson, 45 Mo. 575, 578. In the West case the court stated:

"To be a merchant, in the sense of the law, *the dealer must have on hand goods, wares and merchandise ready*

*for sale and present delivery* and must also actually deal in the selling of the same. One who manufactures and supplies goods alone *to the previous order of his customers,* although he keeps on hand, but not for sale, the materials from which the manufactured articles are produced, is not a merchant within the meaning of the statute." (Emphasis added)

In The Richeson case, the court stated:

"One who manufactures and supplies goods alone to the previous order of his customers, although he keeps on hand, but not for sale, the materials from which the manufactured articles are produced, is not a merchant within the meaning of the statute."

Manor did not produce for prior order, but processed its products to have on hand perishable goods ready for present sale and delivery.

Appellant City relies primarily upon the case of City of Ozark v. Hammond, 329 Mo. 1118, 49 S.W.2d 129. In that case defendant was convicted of violating a city ordinance providing that all persons who sell from a truck or other conveyance any bread, crackers or other merchandise shall first be licensed. Defendant was an agent of Nafizger Baking Company which produced bakery goods in Springfield and sold them at wholesale to retail merchants in various towns, including Ozark. The conviction was reversed because the occupation sought to be taxed was not specifically enumerated in those permitted by delegation by state statute to be licensed by fourth class cities. Anything said in that opinion on the character of a baking operation is mere dicta.

In other Missouri cases cited by appellant, where similar ordinances were attempted to be applied to bakeries operating similarly to the one in the Ozark case, they were held void for the same reasons and upon similar constitutional grounds in denial of equal protection of the law.

We have not failed to note the cases cited by appellant from other jurisdictions, but the facts of the instant case do not bring it within their scope.

The judgment was for the right party and should be affirmed. It is so ordered. All concur.