COUNTY OF CHESTERFIELD

V.

BBC BROWN BOVERI, INC.

Record No. 870754

June 9, 1989

Present: All the Justices

*Steven L. Micas, County Attorney; Jeffrey L. Mincks, Senior Assistant County Attorney*, for appellant.

*William L. S. Rowe (Thomas McN. Millhiser; Hunton & Williams*, on brief), for appellee.

Justice Stephenson delivered the opinion of the Court.

In this appeal, a case of first impression in Virginia, we determine whether a taxpayer, engaged in both manufacturing and non-manufacturing activities, shall be classified as a manufacturer

within the meaning of Code §§ 58.1-3507(A)[1] and 58.1-3703(B)(4).[2]

BBC Brown Boveri, Inc. (Brown Boveri) challenged the validity of personal property and business license tax assessments imposed by Chesterfield County on Brown Boveri's wholly-owned subsidiary, Brown Boveri Power Equipment, Inc. (BBPE), for the years 1980 through 1984. In a bench trial, the trial court determined that BBPE is a manufacturer and, therefore, ruled that the County's 1981, 1982, 1983, and 1984 assessments were invalid.[3] The County appeals.

BBPE has operated a facility in Chesterfield County since 1973. The land, buildings, machinery and tools at the facility are owned by Brown Boveri and leased to BBPE. The buildings contain approximately 150,000 square feet of space, more than two-thirds of which is used as a factory. Offices also are located within the buildings.

The facility is situate upon a 230-acre tract of land adjacent to the James River. Shipments of large equipment are transported to and from the facility by water, rail, and highway.

The plant contains machinery and tools that have an aggregate cost in excess of $14,000,000. The cost of some of the larger pieces of machinery exceeds $1,000,000 each. Indeed, a computer-controlled lathe, the largest in the world, cost approximately $2,600,000.

BBPE performs four types of activities at its facility. The first type involves the original manufacture of equipment that includes turbine rotors, generator rotors, and ancillary devices for electrical generators. BBPE also manufactures compressor rotors, machine shafts, industrial equipment used to roll aluminum, and mechanisms for high pressure steam pipes.

---

[1] Code § 58.1-3507(A) provides in pertinent part:
  A. Machinery and tools . . . used in a manufacturing . . . business shall be listed and are hereby segregated as a class of tangible personal property separate from all other classes of property and shall be subject to local taxation only.

[2] Code § 58.1-3703 provides in pertinent part:
  B. No county . . . shall levy any license tax:
  . . . .
  4. On a manufacturer for the privilege of manufacturing and selling goods, wares and merchandise at wholesale at the place of manufacture.

[3] The trial court also ruled that BBPE's challenge to the 1980 assessment was time-barred by Code § 58.1-3984(A). BBPE assigned no cross-error to this ruling.

The second type of activity involves the final assembly of generator components that are made at other locations. This assembly of components must be done according to precise engineering specifications.

The third type of work is referred to as "rewinding." When the copper component in a power turbine generator no longer functions properly, BBPE removes the copper bars and copper wiring and makes new copper bars and new copper wiring from raw copper. The new bars are made to precise engineering specifications and inserted into the generator, and the new copper wiring is rewound.

The fourth type of activity, which is the source of most of the factual dispute in this case, is classified by the County as repair work and by BBPE as "remanufacturing." This work involves services and repairs to defective equipment belonging to utility companies. BBPE disassembles the defective units, performs engineering tests on them, makes appropriate design changes for the units, and reassembles them.

From 1973 until 1983, the County classified BBPE as a manufacturer. Consequently, BBPE was assessed an annual manufacturer's machinery and tools tax at the rate of $1.00 per $100 of assessed value, rather than a general tangible personal property tax at the rate of $3.60 per $100 of assessed value. Moreover, as a manufacturer, BBPE paid no business license tax to the County.

In the fall of 1983, however, the County's Commissioner of the Revenue (the Commissioner) audited BBPE (hereinafter, the 1983 audit) and determined that the basis of the tax on BBPE's machinery and tools should be allocated according to the percentages of its manufacturing and non-manufacturing revenues. The Commissioner concluded that the manufacturing portion of BBPE's business equaled 35% and taxed that portion at the machinery and tools rate. The Commissioner taxed the non-manufacturing portion, i.e., 65%, at the general personal property rate. In addition, the Commissioner assessed business license taxes for the years 1980 through 1983 for retail merchant, repair, and engineering activities in the aggregate amount of approximately $43,600.

When BBPE objected to these assessments, both the Commissioner and BBPE sought opinions from the Attorney General regarding the validity of the Commissioner's actions. The Attorney General rejected the Commissioner's apportionment scheme, con-

cluding that no legal basis exists "which allows a single piece of property to be subject to more than one *ad valorem* tax apportioned according to its use." 1984-85 Va. Att'y Gen. Rep. 364, 366.[4]

The Attorney General further advised that BBPE is a manufacturer if its "manufacturing activity . . . constitutes a 'substantial' portion of its business activity," in which case the lower tax rate for machinery and tools would be imposed. *Id.* at 367. The Attorney General opined that the term " 'substantial' is not susceptible of being reduced to mathematical precision," is not synonymous with " 'preponderance,' " and is properly "defined as not 'incidental' or 'inconsequential.' " *Id.*

Upon receipt of the Attorney General's opinion, the Commissioner, in October 1984, again audited BBPE (hereinafter, the 1984 audit). Although the Commissioner acknowledged that the 1983 audit had been conducted properly, his 1984 audit produced substantially different results. Following the 1984 audit, the Commissioner concluded that BBPE's manufacturing activities consisted of the following percentages:

| Year | Percentages |
|------|-------------|
| 1980 | 21% |
| 1981 | 22% |
| 1982 | 5% |
| 1983 | 17% |

The Commissioner decided that, to qualify as a manufacturer, a business' manufacturing activities should comprise at least 30% of its total operations. Thus, because BBPE's manufacturing percentages were less than 30%, the Commissioner reassessed all its machinery and tools at the higher tax rate applicable to general tangible personal property.

After taking a view of BBPE's facility and considering the evidence, the trial court ruled that BBPE is a manufacturer. The trial court applied the "substantiality" test, adopting with approval the following statement from *Fernandes Super Markets, Inc.* v. *State Tax Commission*, 371 Mass. 318, 322-23, 357 N.E.2d 296, 299 (1976) (quoting *Commissioner of Corps. &*

---

[4] The County concedes that the Attorney General correctly ruled that its proration procedure was incorrect.

*Taxation* v. *Assessors of Boston*, 321 Mass. 90, 97, 71 N.E.2d 874, 879 (1947)):

> Corporations whose manufacturing operations are substantial, whether viewed with respect to the financial receipts they bring to the corporation, or the proportion of the entire corporate income that they comprise, or the percentage of the entire capital which is invested in them, or the number of persons employed in them as compared with the total number of employees of the corporations, or the ratio to the entire business activities of the corporation, must be regarded as manufacturing corporations within our statutory definitions specifying those that are exempted from local taxation of their machinery.

In passing upon the correctness of the trial court's ruling, we will employ a two-step analysis to determine whether BBPE qualifies as a manufacturer for tax purposes. First, we will determine whether the evidence supports the trial court's finding that certain activities constitute manufacturing. Second, we will determine whether the trial court erred in finding that BBPE's manufacturing activities are substantial when measured against the business' total activities.

I

*Activities Constituting Manufacturing*

■ To constitute "manufacturing," the activity must "[transform] the new material into an article or a product of substantially different character." *Solite Corp.* v. *King George Co.*, 220 Va. 661, 663, 261 S.E.2d 535, 536 (1980). Because the public policy of Virginia is to encourage manufacturing in the Commonwealth, this definition should be applied liberally. *See Prentice* v. *City of Richmond*, 197 Va. 724, 726, 90 S.E.2d 839, 840-41 (1956); *Morris & Co.* v. *Commonwealth*, 116 Va. 912, 920-21, 83 S.E. 408, 411 (1914).

In the present case, the County concedes that BBPE performs some manufacturing. As previously noted, however, the primary area of factual dispute is whether certain rebuilding work should be characterized as repair or as manufacturing.

■ The trial court found as a matter of fact that BBPE's rebuilding work constitutes manufacturing. Consequently, the

court's judgment "shall not be set aside unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it." Code § 8.01-680.

■ BBPE's evidence establishes that its rebuilding activities primarily consist of processing blocks of raw metal or bars of raw copper into finished, machined components that were used to replace ruined or damaged parts in the equipment being repaired. Clearly, BBPE's fabrication of replacement components was a transformation of "new material into an article or a product of substantially different character." *Solite*, 220 Va. at 663, 261 S.E.2d at 536. We conclude, therefore, that the evidence is sufficient to support the trial court's finding that BBPE's rebuilding activities constitute manufacturing.[5]

## II

### *Substantiality of Manufacturing Activities*

■ A business engaged in manufacturing does not lose its status as a manufacturer for tax purposes merely because it conducts some non-manufacturing activities. *See Arkansas Beverage Co. v. Heath*, 257 Ark. 991, 1002, 521 S.W.2d 835, 840-42 (1975); *Commonwealth v. Interstate Amiesite Corp.*, 412 Pa. 180, 183, 194 A.2d 191, 193 (1963). *Cf. Kansas City v. Manor Baking Co.*, 377 S.W.2d 545, 547-48 (Mo. App. 1964); *McDonald's Corp. v. Oklahoma Tax Commissioner*, 563 P.2d 635, 639 (Okla. 1977) (incidental manufacture and preparation of foodstuffs does not transform retail food business into manufacturer). *See generally* Annotation, *What Constitutes Manufacturing and Who Is a Manufacturer Under Tax Laws*, 17 A.L.R.3d 7 (1968).

When a party is engaged in both manufacturing and non-manufacturing activities, it will nonetheless be classified as a manufacturer for tax purposes if the manufacturing portion of its business is substantial. *Fernandes Super Markets, Inc.*, 371 Mass. at 322, 357 N.E.2d at 298; *Assessors of Boston v. Commissioner of Corps. & Taxation*, 323 Mass. 730, 751, 84 N.E.2d 129, 142 (1949). Indeed, the County and BBPE agree that BBPE can be

---

[5] Another area of dispute is whether the design and engineering stages of a manufacturing job constitute manufacturing. The record discloses that BBPE's design and engineering work was ancillary either to original manufacturing work or to a rebuilding job. Thus, because BBPE's design and engineering are integral parts of its manufacturing activity, such work is properly classified as manufacturing.

classified as a manufacturer only if its manufacturing activities, when compared to its total activities, are substantial.

■ The test of substantiality of manufacturing activities for determining whether a multi-purpose business qualifies as a manufacturer for tax purposes does not lend itself to a rigid definition. Rather, the business must be considered as a whole in determining whether it qualifies as a manufacturer. *Assessors of Boston*, 323 Mass. at 746, 84 N.E.2d at 140. To be considered substantial, the manufacturing component of a business must not be *de minimis*, merely trivial, or only incidental to its principal business. *Fernandes Super Markets, Inc.*, 371 Mass. at 323, 357 N.E.2d at 299; *Commissioner of Corps. & Taxation*, 321 Mass. at 96, 71 N.E.2d at 879.

■ The factors that a court may consider in determining whether the manufacturing component of a multi-purpose business makes a substantial contribution to the entire business include the manufacturing component's financial receipts, its proportion of the total corporate income, the percentage it comprises of the total capital investment, the number of employees working in the manufacturing component as compared with the total number of employees, or the ratio of manufacturing activities to the entire business. *Fernandes Super Markets, Inc.*, 371 Mass. at 322-23, 357 N.E.2d at 299. Here, the trial court considered these factors and concluded as follows:

> Based upon the nature of the capital investment at [BBPE's] facility, the size and scope of the plant itself, the composition of the work force, the substantial manufacturing revenues generated at the facility and the nature of the work being performed during the tax years in question, [BBPE's] facility must be considered as conducting the business of manufacturing.

In deciding whether the evidence is sufficient to support the trial court's judgment, the testimonies of Malcolm Preece and Michael Wright are most illuminating. Preece, BBPE's factory and manufacturing manager, testified in detail about 18 major manufacturing jobs performed by BBPE during the audit period. Wright, BBPE's accountant, testified as to the amount of the gross receipts from the 18 jobs.

Preece testified that in some of the 18 jobs, BBPE "used raw material and converted that to a finished product." In other jobs, BBPE "added value to product which originally started as raw material but had not been completed, and [BBPE] did in fact make completions." Preece further stated that "[t]here [were] other instances where [BBPE] not only purchased raw material but actually did the design and engineering work . . . and then . . . procured, fabricated, and completed the assembly and whatever was necessary to get a final product."

The following chart shows a comparison of the gross receipts from the 18 jobs with the gross receipts from all of BBPE's activities during the audit period:

| Year | Total Receipts | Manufacturing Receipts | Percentage of Total Receipts |
|------|----------------|------------------------|------------------------------|
| 1980 | $6,941,505 | $4,334,336 | 62.44% |
| 1981 | 6,826,481 | 3,295,296 | 48.27% |
| 1982 | 5,187,633 | 1,761,376 | 33.95% |
| 1983 | 4,881,367 | 1,780,560 | 36.48% |
| 1984 | 6,281,732 | 2,849,085 | 45.36% |

The evidence presented by Preece and Wright was confined to only a portion of BBPE's manufacturing activities for the period. Additional evidence establishes that numerous other manufacturing jobs also were performed during the period.

Viewing, as we must, the evidence and all reasonable inferences in the light most favorable to BBPE, we conclude that the evidence is sufficient to support the trial court's finding that BBPE's manufacturing activities were substantial when compared with its total activities. Thus, the trial court did not err in ruling that BBPE was a manufacturer and that its machinery and tools should be taxed accordingly.

### III

*Business License Taxes*

Unlike a business that is engaged in two separate trades, one of which is exempt and one of which is not, *see, e.g., Caffee* v. *City of Portsmouth*, 203 Va. 928, 930-31, 128 S.E.2d 421, 423 (1962), BBPE's non-manufacturing activities are ancillary to its primary business of manufacturing. Therefore, for the reasons set forth in Sections I and II of this opinion, we conclude that BBPE

is a manufacturer exempt from the payment of business license taxes.

## IV

### *Conclusion*

Accordingly, we will affirm the judgment of the trial court.

*Affirmed.*