# CIRCUIT COURT OF THE CITY OF NEWPORT NEWS

The Daily Press, Inc.

v.

City of Newport News

February 8, 2002

Case No. (Law) 23903-VC

BY JUDGE H. VINCENT CONWAY, JR.

This matter is before the court on the application of the Daily Press, Inc., a newspaper publisher, challenging the assessment and taxation of certain personal property used in its business by the City of Newport News for the years 1991, 1993, 1994, 1995, and 1996. The taxpayer contends that the classification of such property as machinery and tools, as opposed to exempt manufacturer's capital, is erroneous and, accordingly, seeks a refund of taxes paid in the amount of $273,928, plus interest. The defendant herein, the City of Newport News, through its office of the Commissioner of Revenue, classified and assessed the taxes contested, contends no error was made, and has denied the request for a refund. After considering the evidence presented and the arguments made and viewing the newspaper publisher's manufacturing plant, the court finds the assessment valid and denies the application for relief.

As stipulated by the parties, the Daily Press is a newspaper publisher engaged in a manufacturing business within the meaning of § 58.1-1101, Code of Virginia. As a manufacturer, its assets include both machinery and tools used directly in manufacturing and capital that is related to, but not used directly in, manufacturing operations. Virginia Code § 58.1-1101(A)(2) and (C) prohibits any locality, including the City of Newport News, from imposing a property tax on "capital which is personal property, tangible in

fact, used in a manufacturing ... business *except* machinery and tools, motor vehicles and delivery equipment." (Emphasis supplied.) This does not mean, however, that every machine or tool used by a manufacturing business is taxable. In accordance with the long-standing administrative interpretation by the State Tax Commissioner and opinions of the Attorney General, it is only the machinery and tools which are actually used or are necessary and used in connection with the operation of machinery which is actually and directly used in the manufacturing process that are taxable by the locality. *City of Winchester v. American Woodmark Corp.*, 250 Va. 451, 464 S.E.2d 148 (1995).

As relevant to this case, personal property, including computers and related equipment, used in the executive, financial, personnel, support, general administration, and circulation departments of the Daily Press are supportive of, but not directly involved in, the manufacturing process and are thus classified as capital and exempt from taxation by the locality. No dispute exists in this regard. Additionally, the taxpayer concedes that those machines and tools involved in the actual process of printing the newspaper, *i.e.*, the presses, and of inserting pre-printed material into them are taxable by the locality, as being machinery and tools used in the manufacturing process. The conflict occurs in the areas of news-gathering, the editing process, wire service equipment use, photo lab, camera/platemaking, composition, production, and advertising, with the Daily Press contending that this personal property, while supportive of the manufacturing function generally, is not related to the actual production or manufacturing of its product or used in connection with any machinery actually used in the manufacturing process and should therefore be exempt from the machinery and tools tax assessed by the City of Newport News.

The Virginia Supreme Court has only rarely construed the statute governing the machinery and tools tax, and it has never done so in the context of a newspaper manufacturer. While opinions of the State Tax Commissioner construing the state sales tax exemption for machinery and tools purchased for use in manufacturing businesses as it applies to newspapers have been documented, these opinions are of limited value because the statute creating the sales tax exemption applies only to machinery and tools used "directly" in manufacturing and to equipment, printing, and supplies used "directly" to produce a newspaper, a limitation which the Supreme Court has expressly refused to read into the machinery and tools tax legislation. There are no reported cases in Virginia pertaining to a newspaper publisher and involving the taxation issue now before this court. Cases from other jurisdictions, while helpful with analysis, are of little direct application because of the variety of state tax laws.

The Daily Press is primarily a newspaper publishing company that employs an average of 575 employees to transform approximately forty metric tons of raw paper, negatives, aluminum printing plates, and ink into 118,000 readable, saleable, newspaper products daily. An integrated computer system known as a LAN (local area network) is used for both manufacturing and non-manufacturing functions. After viewing the newspaper publisher's manufacturing plant and reviewing the evidence presented and arguments made, it appears that the operation of the business can be divided into three separate, significantly specialized components for analysis purposes.

First, generally, is its function of gathering the news from a variety of sources, determining news content, editing, configuring the display of advertising and selecting the specific layout of the newspaper, with a significant portion of the work being accomplished with or by the use of computers, and with the product then created being placed on computer storage servers. Second, its pre-press process takes the prepared material from the storage servers through a variety of functions leading to the creation of a negative, generated either directly from a computer or in a paste-up page process which is then photographed, and the transfer of such negative image to an aluminum plate. Third, its use of the aluminum plate in the pressroom to actually transfer the captured image by ink onto paper, creating the newspaper.

The Daily Press describes the third stage of this process, the operation of the printing presses and the resulting production of a newspaper, as its only manufacturing function. Machines used in this process, either directly or in conjunction with machines being so used, are, it is agreed, engaged in the manufacturing process and, therefore, taxable by the locality.

As to the first two stages, the Daily Press contends that this is not part of the manufacturing process. It argues that manufacturing is defined as a process or operation which transforms raw material into a new, useable, consumable item. In this case, it is stated, no actual transformation occurs until blank paper receives the image created, i.e., when the aluminum plate is combined with ink and paper. Under Virginia law, "to constitute manufacturing, the activity must transform the new material into an article or product of substantially different character." *County of Chesterfield v. BBC Brown Boveri, Inc.*, 238 Va. 64, 69, 380 S.E.2d 890, 893 (1989), quoting *Solite Corp. v. King George Co.*, 220 Va. 661, 663, 261 S.E.2d 535, 536 (1980). It is also emphasized that there is no electronic/computer connection between the second and third stages of this process; the aluminum plate is physically carried to the third stage for use. The preparatory work, in the first or second stages, it is contended, while supportive of the manufacturing

process, is not actually used in production or otherwise used in connection with machinery that is so used, and, consequently, should not be taxed as machinery or tools, but rather defined as capital of the business and exempt from local assessment and taxation.

> In addition to relying on the presumptive correctness of the assessment by the Commissioner of Revenue, the City contends that the evidence clearly reflects an integrated manufacturing process, which commences with the initial gathering of news information and concludes with the published newspaper. The personal property used in the first and second stages is just as critical to the manufacturing process as are the printing presses.
>
> Newspaper publication involves the mechanical processing of words and pictures. It begins when words are put into the network. Manufacturing occurs as those words are manipulated and finally affixed onto a printed page.

*Concord Publ'g House, Inc. v. Director of Revenue*, 916 S.W.2d 186, 190 (Mo. 1996) (en banc).

In *Concord, supra*, the newspaper publisher used a computer network to layout the pages of each issue rather than a manual process. There, the court held that the network was an "integral part" of the manufacturing process and constituted machinery and equipment used directly in manufacturing. *Id.*, 916 S.W.2d at 191. The court rejected the proposition that "the only manufacturing that occurs in the publishing of a newspaper is the process of putting ink on paper." *Id.*, 916 S.W.2d at 190.

Based on the court's view of the Daily Press facility, the evidence presented, the submissions filed, and the arguments made, the court is of the opinion that the very nature of the modern, highly integrated and synchronized manufacturing processes involved in this case precludes the drawing of artificial and arbitrary restrictive boundaries by segmenting the process into theoretically distinct stages. To do so is to divide into distinct stages that which is in fact continuous and indivisible.

The court is mindful of the applicant's position that, absent a transformation of raw or other material into a changed, new product, "manufacturing" does not occur, at least as it has been customarily defined. The final determination in any legal matter, of course, is dependent on the law and evidence submitted for consideration. The strict rule of construction, however, cannot be used as an excuse to stray from reasonableness, since it is presumed that the legislature and the courts intend a just and reasonable result. The applicant's own evidence clearly demonstrates an integrated

manufacturing operation involving the synchronization and integration of news gathering, the preparation and editing for printing, the creation of the negative used to imprint the aluminum plate, and the operation of the printing press whereby the plate, ink, and paper are combined to create the final product. One stage could not operate without the other; each integrated part forms part of the production process; the first movement is as essential as the last; and a serious breakdown in one area would quickly stop or impair the output in another area.

The manufacturing process does not begin when the aluminum plate makes an image with ink on paper. It relates back before the creation of the image on the plate, then back further to the computer, which manipulated the image, or design, which would go on the plate, then back to the editing and arranging functions made to the initial material or information. To say that a computer which assimilates and arranges the words and produces the page that, after editing, produces the negative image which is then transferred to an aluminum plate, that is then placed on a press with the resulting image being transferred to paper is not necessary and not used in connection with the machinery actually used in the manufacturing process of this newspaper would, in the court's judgment, be a surprising and unnatural construction.

The process by which random, unassociated facts or impressions are collected, assimilated, and edited to create a story with cohesion and direction that speaks to the community's interest would appear to be the very essence of the publication of a newspaper. As an example, a specific vote or a decision by a city council is not a story. It is a fact. What it means, what those affected say, what the politics are, who wants this result, who opposes, who will benefit, and why, are there conflicts of interest, why was the vote taken at this time will, when answered, begin the story having some community or human interest. Ink and paper are not what is being bought. It is the story. The computer of the editor who studies, rewrites, and finally approves the content and authorizes the story's printing is no less involved in the manufacturing process than the machine which holds the roll of paper and feeds it to the printer. While the transformation of blank paper into a readable format is part of the manufacturing process of a newspaper publisher, the transformation of an unrelated collection of separate facts or impressions into a story of interest, promotive of understanding or knowledge, is also undeniably part of the publisher's manufacturing process. Each action is an essential or indispensable function in the manufacturing operation. A newspaper publisher is not simply a printer; something more is occurring. The machinery or tools used in the preparatory stages of collecting and organizing the information to be printed are both necessary and used in connection with the machinery actually used in the manufacturing process.

The work of each part is either actually used in the manufacturing process or enters into a processing of, or becomes an ingredient or component part of, the article that is manufactured.

Accordingly, the court will deny the applicant's petition for relief, finding the taxes properly assessed and collected.