Present:  Hassell, C.J., Lacy, Keenan, Koontz, Kinser, and
Lemons, JJ., and Carrico,[1] S.J.

THE DAILY PRESS, INC.

v.  Record No. 021107  OPINION BY JUSTICE CYNTHIA D. KINSER
                                February 28, 2003

CITY OF NEWPORT NEWS

        FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                   H. Vincent Conway, Jr., Judge


    The issue in this appeal is whether certain tangible
personal property of a newspaper publisher is "[m]achinery
and tools" and thus taxable by a locality pursuant to Code
§ 58.1-1101(A)(2), or "[c]apital" that is classified as
"intangible personal property" under Code § 58.1-1101 and
subject to taxation solely by the Commonwealth pursuant to
Code § 58.1-1100.  The circuit court concluded that the
"transformation of blank paper into a readable format" as
well as "the transformation of an unrelated collection of
separate facts or impressions into a story of interest,
promotive of understanding or knowledge" is each "an
essential or indispensable function in the manufacturing
operation."  Holding that the "[m]achinery or tools used in
the preparatory stages of collecting and organizing the
information to be printed are both necessary and used in

_____

    [1]Chief Justice Carrico presided and participated in
the hearing and decision of this case prior to the

connection with the machinery actually used in the manufacturing process," the court denied the publisher's amended application for the correction of erroneous assessments of property taxes. Finding error in the circuit court's judgment, we will reverse that judgment.

FACTS AND PROCEEDINGS

The Daily Press, Inc. applied for correction of alleged erroneous assessments of personal property taxes made by the City of Newport News for the tax years 1991 and 1993-1996 and a refund of the taxes paid pursuant to those assessments in the amount of $273,928 plus interest from the dates of payment. In 1997, the City's commissioner of the revenue reclassified The Daily Press from the status of a "processor" to that of a "manufacturer." That reclassification is not at issue in this case. The parties agree that The Daily Press is engaged in a manufacturing business.

The circuit court found that The Daily Press' business operations can be divided into three "components" for purposes of deciding which items of tangible personal property are taxable by the City as "[m]achinery and tools" pursuant to the provisions of Code § 58.1-1101(A)(2). The first component consists of content or information

effective date of his retirement on January 31, 2003.

2

gathering, the second is called the "pre-press process," and the final component is the actual operation of the printing presses in the pressroom. The Daily Press concedes that the machines and equipment in the pressroom are used directly in the manufacturing process and are thus taxable by the City as "[m]achinery and tools." The contested items are the equipment and machines used in information gathering and pre-press activities; and include such things as computers, servers, modems, and other equipment linked in a local area network or "LAN" as well as photography equipment.[2] Thus, we will focus on the first two components or stages of The Daily Press' operations.

The content of the newspaper published by The Daily Press is gathered from a variety of sources, including wire services, syndicated columnists and cartoonists, advertisers, and The Daily Press' own reporters. All the content is delivered to The Daily Press in either an electronic or tangible form. The potential content, which includes pictures, is then stored on various computer servers connected to the LAN, where the information can be accessed and used by any member of the newspaper's editorial staff.

---

[2] The contested items are specifically identified on Plaintiff's Exhibit 4.

The Daily Press' staff then determines what content will be used in the newspaper on a given day and where each item will be located within the newspaper itself. The latter process is accomplished on a page-by-page basis by one of two methods. A page of the newspaper can be composed by transferring electronically stored information from a computer server into the image of the newspaper page on a computer screen. Once the page is composed on the screen, it is either printed onto paper, which is photographed to create a negative, or used to create a negative electronically. An alternative method used during the relevant tax years involves manually pasting a paper copy of each item onto a board in the shape of a newspaper page and then photographing that board to create a negative.

The final step during the pre-press process occurs when the negative of each page is used to cast an image onto an aluminum press plate. Then, a machine punches holes in the press plate and bends it so that it will fit properly on a printing press cylinder. The press plate is subsequently hand-carried to the pressroom where it is mounted on the printing press. Using the press plate, ink and other materials, and the printing press, The Daily Press' newspaper is finally created by a process called

"offset printing." In addition to its own newspaper, The Daily Press also prints newspapers for other publishers, fliers for various advertisers, and other publications such as course schedules for universities.

The Daily Press argued before the circuit court, as it does here, that the equipment and machines used in the first two stages of its operations, while supportive of the manufacturing process, are not directly used in the manufacturing of its product, nor are they used in connection with the operation of any machinery actually and directly used in the manufacturing process. In contrast, the City asserted that The Daily Press has an integrated manufacturing process that begins with the gathering of news and ends with the printed newspaper. Thus, the City argued that the equipment and machines used in the first two stages of The Daily Press' operations are just as critical to the manufacturing process as the printing presses. The City makes the same arguments on appeal.

Citing the decision in Concord Publishing House, Inc. v. Director of Revenue, 916 S.W.2d 186 (Mo. 1996), and considering the evidence presented, the circuit court opined that "the very nature of the modern, highly integrated and synchronized manufacturing processes involved in this case precludes the drawing of artificial

and arbitrary restrictive boundaries by segmenting the process into theoretically distinct stages." Instead, the court concluded that the manufacturing process did not begin when the aluminum plate was used to make an image on paper but started with the "editing and arranging functions made to the initial material or information." In the court's words, "[t]he computer of the editor who studies, rewrites and finally approves the content and authorizes [a] story's printing is no less involved in the manufacturing process than the machine which holds the roll of paper and feeds it to the printer." Thus, the court held that the taxes were properly assessed and collected. The Daily Press appeals from the circuit court's judgment.

ANALYSIS

Application of the provisions of Code §§ 58.1-1100 and -1101 involves a mixed question of law and fact. See Smyth County Comm. Hosp. v. Town of Marion, 259 Va. 328, 336, 527 S.E.2d 401, 405 (2000). On appeal, we review a mixed question of law and fact de novo by giving deference to the trial court's factual findings in order to review the court's application of the law to those facts. Caplan v. Bogard, 264 Va. 219, 225, 563 S.E.2d 719, 722 (2002). In this case, the facts are essentially undisputed.

As the parties stipulated, The Daily Press is engaged in a manufacturing business. Consequently, its "[c]apital which is personal property, tangible in fact, used in manufacturing" is classified as "intangible personal property" pursuant to Code § 58.1-1101 and is subject to taxation only by the Commonwealth under the provisions of Code § 58.1-1100. However, "[m]achinery and tools, motor vehicles and delivery equipment of such businesses shall not be defined as intangible personal property . . . and shall be taxed locally as tangible personal property." Code § 58.1-1101(A)(2), see also Code § 58.1-3507(A).

Stated differently, the provisions of Code §§ 58.1-1100 and -1101(A)(2) prohibit a locality from assessing a personal property tax upon property classified as "intangible personal property." City of Winchester v. American Woodmark Corp., 250 Va. 451, 456, 464 S.E.2d 148, 151 (1995). Thus, the City may tax the contested items only if they fall within the exception carved out in Code § 58.1-1101(A)(2) for "[m]achinery and tools." We have interpreted Code §§ 58.1-1100 and -1101(A)(2) as general tax statutes that must be construed against the government and in favor of the citizen. Id., 464 S.E.2d at 152.

The definition of the term "[m]achinery and tools" is at the core of the present controversy. In American

_Woodmark_, we adopted a definition of that term which had been utilized by the tax commissioner and the Attorney General for many years:

> Since 1950, Virginia's tax commissioner has opined that the phrase "machinery and tools" contained in Code § 58.1-1101(A)(2) and its precursors means machinery used in the actual process of manufacturing. Likewise, the Attorney General has consistently opined that "'machinery and tools used in a particular manufacturing business' are the machinery and tools which are necessary in the particular manufacturing business and which are used in connection with the operation of machinery which is actually and directly used in the manufacturing process."

_Id._ at 458, 464 S.E.2d at 152 (citations omitted).  As The Daily Press correctly notes, this definition has two components: (1) machinery that is "used in the actual process of manufacturing;" or (2) machinery that is "necessary in the particular manufacturing business and which [is] used in connection with the operation of machinery which is actually and directly used in the manufacturing process."  _Id._

We conclude that the circuit court erred in its application of this definition.  This Court has defined the term "manufacturing" as the transformation of " 'new material into an article or a product of substantially different character.' "  _County of Chesterfield v. BBC Brown Boveri, Inc._, 238 Va. 64, 69, 380 S.E.2d 890, 893 (1989) (quoting _Solite Corp. v. King George Co._, 220 Va.

8

661, 663, 261 S.E.2d 535, 536 (1980)).  The evidence in this case demonstrates that the only place where "manufacturing" occurs is in the pressroom.  There, a printing press, using ink, a water fountain solution mix, and the aluminum press plate, transforms a news print roll weighing approximately 2000 pounds into a newspaper.  The machines and equipment used to gather and store the news and advertisements, to determine the content of the newspaper and its physical layout, and to create the aluminum press plate, i.e., the machines and equipment utilized in the first and second stages of The Daily Press' operations, are not used in the "actual process of manufacturing" nor are they "used in connection with the operation of machinery which is actually and directly used in the manufacturing process."[3]  American Woodmark, 250 Va. at 458, 464 S.E.2d at 152.

The City, as did the circuit court, mistakenly focuses on The Daily Press' integrated manufacturing business operations rather than on the actual manufacturing process wherein new materials are transformed into a substantially

_____

[3] The only exception is the aluminum press plate.  The Daily Press acknowledges, and we agree, that the press plate is used in connection with the operation of the printing presses which are actually and directly used in the manufacturing process.  Thus, the press plate is "[m]achinery and tools" taxable by the City.

9

different product.  During a colloquy with counsel for The Daily Press, the circuit court correctly recognized that the initial inquiry in applying American Woodmark is determining where the manufacturing process begins and ends.  However, the court then failed to apply this Court's definition of the term "manufacturing."  The court disregarded the fact that The Daily Press manufactures newspapers, not news.

As we explained in American Woodmark, once it is determined that a taxpayer is engaged in a manufacturing business, a distinction must be drawn between the taxpayer's "[m]achinery and tools" and its "capital."  Although American Woodmark was a manufacturing business, its furniture, fixtures, office equipment, and computer equipment located at its headquarters were not "[m]achinery and tools" because those items were not "used in connection with the operation of machinery which is actually and directly used in the manufacturing process."  Id. at 458-59, 464 S.E.2d at 153.  The principle gleaned from American Woodmark can be simply stated:  personal property that may be essential to the overall operations of a manufacturing business is not "[m]achinery and tools" subject to local taxation unless the property is actually and directly used

10

in the manufacturing process where new materials are transformed into a substantially different product or the property is connected with the operation of machinery actually and directly used in the manufacturing process. The circuit court in the present case omitted the word "operation" from much of its analysis and, instead, concluded only that the contested items were "used in connection with the machinery actually used in the manufacturing process of this newspaper."

The City, nevertheless, equates news-gathering, writing, editing, and layout functions, in other words the activities in the first two stages of The Daily Press' operations, with the design and engineering activities classified as manufacturing in Brown Boveri. The City's approach and its reliance on that decision misconstrue the issue in the present case. The question in Brown Boveri was whether the taxpayer, engaged in both manufacturing and non-manufacturing activities, should be classified as a manufacturer within the purview of Code §§ 58.1-3507(A) and –3703(B)(4). 238 Va. at 65-66, 380 S.E.2d at 890-91. Since the parties agree that The Daily Press is a manufacturer, the issue decided in Brown Boveri is not before us. Instead, the relevant inquiry here is whether the contested items of tangible personal property are used

11

directly in the manufacturing process and are thus
"[m]achinery and tools" taxable by the City rather than the
Commonwealth.  Contrary to the City's assertion, we did not
determine the classification of any particular item of
personal property in Brown Boveri.  We decided merely that
Brown Boveri was a manufacturer and "that its machinery and
tools should be taxed accordingly."  Id. at 72, 380 S.E.2d
at 894.

Because the issues in Brown Boveri and this case are
fundamentally different, it is not appropriate here to
apply a liberal definition of the term "manufacturing" as
we did in Brown Boveri.  In suggesting otherwise, the City
forgets that the public policy behind that liberal
construction, i.e., to encourage manufacturing in the
Commonwealth, is already achieved here because the parties
agree that The Daily Press is a manufacturer.  Contrary to
the City's argument, American Woodmark rather than Brown
Boveri controls the disposition of this case.

Finally, the circuit court's reliance on the decision
in Concord Publishing is misplaced.  The issue there was
whether certain computers and equipment purchased by a
publisher to implement changes in the production process
and format of a newspaper were exempt from Missouri's sales
and use tax.  916 S.W.2d at 188.  In deciding that issue,

12

the court stated that "[a]lthough some courts strictly interpret the phrase 'directly used' to exempt only those machines that physically alter raw materials to a finished product, Missouri has adopted the 'integrated plant doctrine,' viewing manufacturing operations as 'continuous and indivisible.' " Id. at 191. Obviously, our definition of the term "manufacturing" is the interpretation rejected in Missouri. See American Woodmark, 250 Va. at 458-59, 464 S.E.2d at 153.

CONCLUSION

For these reasons, we conclude that the personal property taxes at issue were erroneously assessed and that The Daily Press is entitled to a refund of the taxes paid pursuant to the erroneous assessments plus interest. Accordingly, we will reverse the judgment of the circuit court, and remand for correction of the erroneous assessments, calculation of the amount of the refund and interest due to The Daily Press, and entry of final judgment in favor of The Daily Press.

Reversed and remanded.