Hughes *v.* Pittsburgh, Appellant.

Argued April 14, 1954. Before HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ. (RHODES, P. J., absent).

*Robert Engel,* Assistant City Solicitor, with him *J. Frank McKenna,* City Solicitor, for City of Pittsburgh and City Treasurer, appellants.

*Wallace E. Edgecombe,* for appellee.

OPINION BY ERVIN, J., July 13, 1954:

This is an appeal by the City of Pittsburgh and David A. Smith, City Treasurer, from the judgment and order of the County Court of Allegheny County declaring null and void additional assessments for mercantile taxes levied by the City of Pittsburgh and the School District of Pittsburgh against C. E. Hughes and David M. Ogilvie, trading as Hughes-Ogilvie Company. The School District of Pittsburgh discontinued its appeal to this Court.

The City of Pittsburgh enacted its Mercantile Tax Ordinance No. 488, approved December 1, 1947, pursuant to the power given in the Act of June 25, 1947, P. L. 1145, 53 PS §2015.1. The City ordinance provides that wholesale and retail vendors or dealers in goods, wares and merchandise shall be taxed at the rate of one mill on each dollar of the volume of the annual gross wholesale business, and two mills on each dollar of the volume of the annual gross retail business. The School District of Pittsburgh levied a similar tax in accordance with the Act of June 20, 1947, P. L. 745, 24 PS §582.1, with rates fixed at one-half those provided for in the City ordinance. The Hughes-Ogilvie Company has its principal office in the City of Pittsburgh and has been continuously engaged since 1925, on both a wholesale and retail basis, in the sale of office furniture and equipment, laboratory, school, public auditorium, theater, and gymnasium equipment, including desks, chairs, filing cabinets and similar equipment. The Company filed combination mercan-

tile tax returns for the years 1948, 1949, 1950, 1951 and 1952 with the City of Pittsburgh and School District of Pittsburgh and paid the taxes shown to be due thereon on the basis of the Company's allocation of gross sales to wholesale business and to retail business. As a result of an examination of the records of the Company, made shortly before October 16, 1952, the City and the School District made assessments of additional taxes with penalties and interest for the years 1948 through 1952 based upon a reallocation of the Company's sales as between wholesale and retail business. Subsequently, on April 13, 1953, the City and School District issued a revised assessment which reflected an increase in the volume of sales classified as wholesale in each of the years 1948 through 1952 as compared to the volume so classified as a result of the first audit in October 1952. However, despite the adjustment in the volume of wholesale business with a consequent reduction in tax liability, the revised assessment of April 13, 1953 still reflected a balance due the City and School District for additional taxes, penalties and interest. It is admitted that in the revised assessment certain sales are properly classified as retail business and certain sales are properly classified as wholesale business. However, the disputed categories are the sales made by the Company in large quantities to local municipal authorities, the General State Authority, public schools, private schools, hospitals, charitable institutions and churches. All sales in this category had been reported by the Company as "wholesale sales" on its tax return but in the reallocation made by the City and School District, as shown in the revised assessment, these sales had been classified as "retail sales." The lower court found the Company to be "wholesale vendors or dealers under the provisions of the Act of Assembly and of the mu-

nicipal ordinance with respect to the challenged sales and gross volumes here in dispute" and entered judgment in favor of the Company. The City and School District filed exceptions which were dismissed by the court in banc. This appeal followed.

In support of the contention that sales of furniture and equipment to municipal authorities, the General State Authority, schools, hospitals and other institutions made by a wholesale and retail vendor are "retail sales" within the meaning of the Mercantile Tax Ordinance of the City of Pittsburgh, the appellant relies principally on *Brown & Zortman Machinery Company v. Pittsburgh*, 375 Pa. 250, 100 A. 2d 98. In that case the taxpayer sold large machine tools to industrial concerns which used them in their manufacturing processes. In holding such sales to be retail sales the Supreme Court, speaking through Mr. Justice MUSMANNO, said at page 256: "The plaintiff in effect argues that because of the hugeness of the articles it sells it cannot be regarded as a retail dealer. But the test of a wholesale dealer is whether its customer buys for the purpose of reselling. Whether one buys an elephant or a rabbit, the operation cannot be wholesale if the buyer does not intend to resell the beast." Under the circumstances in the *Brown* case the Supreme Court properly concluded that the sales there involved were retail sales. However, on the basis of the test used in the *Brown* case the appellant contends that the true distinction between a wholesale dealer and a retail dealer is whether or not the sale is made to one who buys to resell it and since the sales in dispute here were made to schools, institutions, municipal authorities and others who were not dealers in or vendors of goods, wares and merchandise, they are not wholesale sales and must necessarily be retail sales. In the instant case the appellee is admit-

tedly a "wholesale and retail vendor." The rate of mercantile tax appellee must pay is established in the ordinance at one mill on each dollar of the volume of the annual gross *wholesale business* and two mills on each dollar of the volume of annual gross *retail business*. The phrases "wholesale business" and "retail business" are not defined in the ordinance but to consider only the use or disposition of the subject of the sale by the purchaser is to ascribe too restrictive a meaning to either phase. Pertinent to the problem of construction of these phrases in the ordinance here involved is the provision of the Statutory Construction Act of May 28, 1937, P. L. 1019, Sec. 33, 46 PS §533, which provides that words used in a statute shall be construed according to their common and approved usage. If the phrase "wholesale business" as used in the ordinance is to be given its "common and approved usage" it is clear that the sales here involved are wholesale. The definitions of "wholesale" found in leading dictionaries[1] clearly emphasize the element

---

[1] WEBSTER'S NEW INTERNATIONAL DICTIONARY, SECOND EDITION.

Wholesale   n.   1. Sale of goods by the piece or in large quantity; distinguished from retail.

2. A wholesale business—by wholesale. In the mass; in large quantities; hence, without distinction or discrimination.

Wholesale   adj.   1. Of, pertaining to, or engaged in, wholesale trade or businesses; selling or sold to retailers or jobbers rather than consumers.

2. Extensive and indiscriminate.

Wholesale   adv.   In a wholesale manner; by wholesale.

Wholesale, v.t. & i; To sell or dispense by wholesale.

BLACK'S LAW DICTIONARY, THIRD EDITION.

Wholesale.   To sell by wholesale is to sell by large parcels, generally in original packages, and not by retail; to sell goods in gross to retailers, who sell to consumers. *Kass v. Hirschberg, Schultz & Co.*, 191 App. Div. 300, 181 N.Y.S. 35, 37. A sale at "retail" and one at "wholesale" are opposed to each other, one being a sale

of quantity involved in a sale which is considered wholesale. Moreover, the Supreme Court has occasion in the case of *Commonwealth v. Bay State Milling Company*, 312 Pa. 28, 167 A. 307, to define and apply the word "wholesale" under the State Mercantile License tax imposed by the Act of May 2, 1899, P. L. 184. The Commonwealth contended that the language of the Statute, which for all practical purposes was identical with the language relied upon in the present case by the City, limited "wholesale" sales to sales to dealers in or vendors of goods, wares and merchandise. Mr. Justice SCHAFFER rejected that contention on the part of the Commonwealth and ruled that the word "wholesale" should be given its common, usual definition. Furthermore, he stated at pages 31 and 32: ". . . If the position of the Commonwealth were to be sustained, every great steel company which sells its products in large quantities to other concerns to be manufactured would be a retailer, every coal mining company vending its coal to a manufacturing company, it matters not in what quantity, would be a retailer, all lumber companies selling their product to those who changed its form by manufacturing would be retailers and so through all the lines of industry. It cannot be possible that the legislative intent was to bring about such a contradiction in terms as that businesses which in common parlance are universally spoken of as wholesale businesses, for the purpose of taxation are to be converted into retailers, and to be taxed under a designation which in fact fits them not at all. *The Commonwealth would have the tax levied, not by reason of how the alleged taxable sells his product, but*

in small quantities, and the other in large quantities. *Kentucky Consumers Oil Co. v. Commonwealth*, 192 Ky. 437, 233 S.W. 892, 893. See, also, *Commonwealth v. Consolidated Dressed Beef Co.*, 245 Pa. 605, 91 A. 1065, 1066, Ann. Cas. 1917A, 966.

*by what his vendee does with it."* (Emphasis added)

Where, as here, the testimony fully establishes that the sales in dispute were made by the appellee on a wholesale basis, in wholesale quantities, at wholesale prices, in competition, generally by formal bids, with other suppliers who similarly considered and priced such sales on a wholesale basis, we hold such sales to be "wholesale business" and, as such, taxable at the one mill rate.

Judgment is affirmed at appellant's costs.