127 So.2d 624

**ASSOCIATED GROCERS OF ALABAMA, INC.**

v.

**Harry H. HADEN, Commissioner of Revenue.**

**3 Div. 898.**

Supreme Court of Alabama.

March 2, 1961.

M. R. Nachman, Jr., Steiner, Crum & Baker, Montgomery, and Neil Metcalf, Geneva, for appellant.

MacDonald Gallion, Atty. Gen., Guy Sparks, Sp. Asst. Atty. Gen. and Wm. H. Burton, Asst. Atty. Gen., for appellee.

Thos. B. Hill, Jr., Wm. A. Oldacre and Hill, Hill, Stovall & Carter, Montgomery, amici curiæ.

SIMPSON, Justice.

This appeal challenges the final decree rendered by the Montgomery County Circuit Court, In Equity, in a declaratory judgment proceeding wherein appellant by its bill of complaint sought a declaration of rights that it was a wholesale dealer or jobber under § 730, Title 51, Code 1940, and was entitled to purchase state tobacco tax stamps at a discount under § 728, Title 51, Code 1940, and under Permit Number 416 issued to it by the State Department of Revenue.

The court decreed that appellant was an association, collection, or combine of retailers bound together as, and possessing all the characteristics of, a co-operative being owned, controlled, managed and operated by and for retailers as their purchasing agent and not a wholesale dealer or jobber within the meaning of said § 730; that the issuance of a tobacco stamping permit can be revoked when erroneously issued to any person, firm, corporation or association not a wholesale dealer or jobber within the meaning of § 730, Title 51, Code 1940, and that said Permit Number 416 was erroneously issued.

On November 26, 1958 the State Department of Revenue issued appellant tobacco stamp Permit Number 416 as a wholesale dealer or jobber which entitled appellant to purchase tax stamps for tobacco products at a 7½% discount. On June 22, 1959, the State Department of Revenue gave notice to appellant that this permit had been erroneously issued because appellant was not a wholesale dealer or jobber of tobacco products within the meaning of § 730 and was notified to appear before the Department of Revenue and show cause why its permit should not be revoked. Thereafter, appellant filed its bill and the ensuing decree resulted in this appeal.

It is necessary first to understand the true nature of appellant's organization and operation. Appellant was organized to engage in the wholesale grocery business upon the terms and conditions as it selected. Appellant is a co-operative retailer-owned warehouse distributing unit. Only one place of business, the warehouse establishment, is owned and operated by the corporation. There is no retail outlet on the premises where the wholesale function is located, nor does appellant operate or manage any retail establishment. The function of appellant's warehouse unit is to purchase merchandise in quantities from producers, store it, and sell the goods at wholesale prices pursuant to individual orders of the member retail grocers. The present membership appears to be around one hundred and thirty-five and represents individually owned and operated supermarkets and grocers, all of which sell tobacco products at retail.

Stock ownership in appellant, which is the basis for membership, is restricted to retail food merchants. An applicant to become a member must be approved by the board of directors, and upon election to membership, must subscribe to seven and one-half shares of capital stock at one hundred dollars per share. Each member or stockholder has one and only one vote at stockholder meetings. Each member of the board of directors is a stockholder and member and retail food merchant.

Patronage dividends, which are returned profits to members of the appellant association earned during the preceding fiscal year, determined in proportion to the total amount of purchases by the member from the appellant association to the total amount of profits to be refunded, were stricken in the year 1959. Patronage dividends were computed on profits to June 27, 1958 and were paid in 1958. None were paid thereafter. No other change has been made in the method of operation. Various types of credit memos are received by each member of Associated Grocers. The amount of the credit varies but it is in proportion to the monetary amount of groceries and tobacco products each member purchases in the preceding fiscal period. One covers tobacco; another is for spoilage or operational breakage and loss; another is for advertising and promotion; and there are others. All of these credit memos are declared from the profits of sales to member retail merchants.

As stated, appellant, a corporation, is a co-operative retailer-owned grocers warehouse unit which sells groceries and tobacco products in large quantities to member retail merchants at wholesale prices for sale at retail to the ultimate consumer—the general public.

The applicable provisions of our statute are here set out:

Title 51, § 728, Code 1940. " * * When wholesalers or jobbers have qualified as such with the department of revenue as provided in section 730 of this title, and desire to purchase stamps as prescribed herein for use on taxable tobaccos sold and delivered by them, the department of revenue shall allow on such sales of tobacco tax stamps a discount of seven and one-half percent (7½%) on the entire amount of the sale. * * *"

Title 51, § 730, Code 1940. *"The phrase 'wholesale dealer and jobber,' as used in this subdivision shall include persons, firms, or corporations who shall sell at wholesale only any one or more of the articles taxed herein to licensed retail dealers for the purpose of resale only.* The phrase 'retail dealer', shall include every person, firm or corporation other than a wholesale dealer, as defined in this section, who shall sell or offer for sale any one or more of the articles taxed herein, irrespective of the quantity or amount, or the number of sales; and all persons operating under a retail dealer's license. The word 'stamps', as used herein means the stamp or stamps by the use of which the tax levied under this subdivision is paid and shall be designated Alabama revenue stamps. * * * *No person, firm, corporation, association or co-partnership operating more than one retail store or mercantile establishment within this state under the same ownership, supervision or management, or operating a wholesale and retail business under the same roof, shall be included within the meaning of the words, 'wholesaler or jobber', as the same are used in this subdivision.* * * The department of revenue may at any time revoke the permit issued to any wholesaler as hereinabove provided who shall be guilty of violating any of the provisions of this chapter, or any of the rules of the department of revenue adopted and promulgated under authority of this subdivision, and refuse to sell any wholesaler or jobber, any stamps until such time as his permit shall be restored." (Emphasis supplied.)

Due regard must be given to the plain meaning of the language of the statute. Whether appellant is to be classed as a wholesaler or jobber turns on the meaning of that expression as used in our statute. The question recurs, does appellant sell at wholesale, only, any one or more of the enumerated articles to licensed retail dealers for the purpose of resale so as to come under the term wholesale dealer or jobber, as that term is employed in the statute?

Section 730, supra, provides that no person, firm, corporation, association or co-partnership operating more than one retail store or mercantile establishment within this state under the same ownership, supervision or management, or operating a wholesale and retail business under the same roof, shall be included within the meaning of the words, wholesaler or jobber. There is no dispute but that appellant does not operate a wholesale and retail business under the same roof of its warehouse establishment. Nor does appellant operate any retail store or mercantile establishment in this state under the same ownership, supervision or management. Appellant does not fall within these clauses of exclusion in said § 730; therefore, whether appellant is a qualified wholesaler or jobber entitled to receive the tobacco stamp Permit Number 416 rests upon whether appellant sells at wholesale, only, to licensed retail dealers.

There is no dispute nor contention made by appellee that appellant does not sell to licensed retail dealers. As determined by our case of National Linen Service Corp. v. State Tax Commission, 237 Ala. 360, 186 So. 478, the test of a retail transaction is that the consumer is the last person to whom the property passes in the course of ownership. The members of Associated Grocers make the retail sale—a sale to the ultimate consumer. Appellant makes no retail sales.

In Black's Law Dictionary (4th Ed.) wholesale is defined as selling to retailers rather than to consumers; a sale in large quantity to one who intends to resell; a

sale of goods by the piece or in large quantities. Wholesale is defined in Vol. 45, Words and Phrases, page 107, as follows: "The primary and usual meaning of the word 'wholesale' is the sale of goods in gross to retailers who sell to consumers. State v. Spence, 53 So. 596, 597, 127 La. 336."

In Great Atlantic & Pacific Tea Co. v. Cream of Wheat Co., 2 Cir., 227 F. 46, 47, the term wholesaler was defined as follows: "A 'wholesaler' is one who buys in comparatively large quantities and who sells, usually in smaller quantities, but never to the ultimate consumer of an individual unit. He sells either to a 'jobber' (a sort of middleman) or to a 'retailer'; the latter being the one who sells to the consumer. The 'large' quantities bought by the wholesaler may vary greatly—from a fraction of a car load to many car loads; the character, not of his buying, but of his selling, marks him as a wholesaler."

When "wholesale" is given its ordinary meaning when used in sales parlance, it means a sale in large quantity to one who intends to, and does, resell to the ultimate consumer. Our statute § 730, supra, defines a wholesale dealer or jobber as one who sells at wholesale only. Appellant seems to entertain that status. It does not sell at retail.

Another question recurs: Has the formation, organization, and operation of the Associated Grocers of Alabama, Inc., completely meshed the retail and wholesale functions so that the appellant's warehouse function merely distributes the goods as an agent rather than selling to the member retail merchants? We think not, but to the contrary, that appellant is a wholesale dealer or jobber under the terms of our statute, supra. True, the member retail merchants own shares in appellant and exercise control over appellant to the extent of enacting the general business policies, but in any type of business organization, whether a co-operative or any corporation, the ultimate control rests in the owners—the stockholders. The warehouse and its function is

under the direction and management of a full-time manager who does not operate or exercise any authority over the operation of the retail stores. It is uncontradicted that member merchants can purchase their merchandise from appellant or any other source and no quota is established by appellant. Both wholesale and retail functions are geographically separated and physically distinct. There is no functional integration of the warehouse function of appellant with the independent retail function performed by the member retail merchants. Nor is it so coordinated that all must be considered as an integral of one operating unit or establishment, or conduit through which groceries and tobacco products flow from the producer to the ultimate consumer.

Appellant, Associated Grocers, etc., is not like a chain of retail grocers operated by the company which purchases for all the stores and merely distributes the merchandise from a central warehouse, as was the situation in such cases as Safeway Stores, Inc. v. Oklahoma Tax Commission, 195 Okl. 333, 157 P.2d 749, and Veazey Drug Co. v. Bruza, 169 Okl. 418, 37 P.2d 294, which appellee cogently argues establish the proposition that a corporation operating a chain of retail stores is not a wholesaler; a fortiori appellant is not a wholesaler. In those cases the wholesale and retail functions were so integrated throughout the organization of the distribution and merchandising system of the chain store organization that the wholesale function was nonexistent. As we view it the argument overlooks the fact that appellant is not a chain of retail stores operated and controlled by a central management which controls the member retail merchants.

In the case of Fishermen's Co-op. Ass'n v. State, 198 Wash. 413, 88 P.2d 593, 92 P. 2d 202, the question was whether the Fishermen's Co-op. Ass'n, which was organized to promote the sales of its individual fishermen members, was subject to be taxed as a wholesaler for making sales at wholesale. The association was held not to be exempt from the tax levied upon sales made at wholesale. The court found that the sales made by the association were not retail sales; that being so, if the association was not acting as a broker or agent in promoting sales for others the sales were at wholesale. The same rationale seems applicable to the instant case. Appellant is an independent wholesale activity that purchases in large quantities and sells at wholesale prices to retail merchants pursuant to individual orders, and they in turn sell to the ultimate consumer. Appellant does not operate, manage, supervise, or direct any retail outlet of its own or any retail member's outlet. The independent wholesale function is not destroyed even if appellant be a co-operative corporation and the ultimate management devolves from the members upon the manager of the warehouse.

After careful consideration of the able briefs and arguments advanced by the parties, it is our conclusion that appellant is a wholesale dealer or jobber as the words are used in the statute, supra, and that the learned trial court was in error in the contrary ruling.

Reversed and remanded.

LIVINGSTON, C. J., and GOODWYN and COLEMAN, JJ., concur.