## Staunton

DICKERSON G. M. C., INC. v. COMMONWEALTH OF VIRGINIA.

September 10, 1965.

Record No. 5979.

Present, All the Justices.

*James E. Buchholtz* and *William B. Hopkins* (*Martin, Hopkins & Lemon*, on brief), for the plaintiff in error.

*M. Harris Parker, Assistant Attorney General* (*Robert Y. Button, Attorney General*, on brief), for the Commonwealth.

BUCHANAN, J., delivered the opinion of the court.

The appellant, Dickerson G. M. C., Inc., (petitioner), filed its petition in the court below under § 58-1130 of the Code, 1959 Repl. Vol., to correct an assessment of license taxes against it for the years 1959, 1960, 1961 and 1962, computed on a retail merchant license basis which it claimed to be erroneous.

Petitioner alleged that since 1956 it had operated its business under both a retail merchant license and a wholesale merchant license "because a large portion of said business is the sale of trucks at consider-

ably less than retail price to institutional, commercial or industrial users;" that petitioner had kept yearly records separating the latter sales from sales at retail, and paid license taxes accordingly; and that no additional license taxes were due from it because in making the assessments complained of no allowance was made to it for any of its truck sales as being made at wholesale "even though a large portion of same were sold at considerably less than retail price to institutional, commercial or industrial users" under § 58-304 of the Code. That section is in Article 6 of Chapter 7 of Title 58, providing for the licensing of wholesale merchants, and in its second paragraph provides:

"The term *'wholesale merchant,'* as used in this article, means every merchant who sells to other persons for resale only or who sells at wholesale to institutional, commercial or industrial users."

The trial court heard *ore tenus* the evidence offered by the parties and upon consideration thereof held that the assessments complained of were correct, denied the relief sought and dismissed the petition. On this appeal we resolve conflicts in the evidence and the just inferences therefrom in favor of the appellee, the Commonwealth. *Furr* v. *Arnold*, 202 Va. 684, 119 S.E. 2d 242.

For the petitioner a certified public accountant, employed by it, testified that in 1959 he pointed out to the petitioner that its truck sales were mostly to commercial and industrial users and could possibly be classified under § 58-304 as wholesale; "that a wholesale merchant is one who sells to an institutional, commercial, or industrial user;" that accordingly in 1959 application was made for two licenses,[1] one retail, based on sales of labor in the shop and on a few cars which petitioner still had (it no longer deals in automobiles), and on truck sales to a few individuals. The other application was for a wholesale license based on the cost of sales of trucks sold to institutional, commercial or industrial users.[2]

As to the wholesale license applied for, the accountant testified that "parts to other dealers for resale, or possibly to commercial users for their own fleet of trucks, is wholesale, and those trucks, new or used, that went to commercial users such as contractors, other wholesalers, flour mill, retailers, and any business that might need a truck." He further testified that while he had not inspected the records, he knew that the trucks were nearly always sold below the suggested

---

[1] Permitted by Code § 58-336.

[2] Section 58-305 of the Code requires that a wholesale merchant's license be based on purchases. A wholesale merchant ordinarily pays a lower license tax than a retail merchant.

list price. These were not the type of trucks ordinarily bought for personal use, he said, except possibly some small pickup trucks.

The accountant also said that he would think that any sale to a commercial consumer would be wholesale, and that the phrase "at wholesale" meant generally sales at a lower price than the list price, and in the case of these trucks "it is certainly lower than the list" and that was the way he went about making his determination in this case. He stated that the petitioner sold trucks singly and in lots, and if the sale was only one truck to a school board or dairy, he would classify it as wholesale if sold below the manufacturer's list price, and no emphasis should be placed on quantity.

The assistant commissioner of revenue for the city of Roanoke was called by the petitioner as an adverse witness, but his testimony added nothing material to the petitioner's claim. When questioned by the Commonwealth's counsel he expressed the view, based on his studies, that to sell at wholesale means to sell in volume and that the selling price has nothing to do with it.

For the Commonwealth, one of its auditors of long experience testified that he examined petitioner's records and determined that its method of reporting for license assessments was improper. He observed that practically all of petitioner's truck sales to any purchaser were put in the wholesale column; that petitioner's accountant stated to him that its sales were on a competitive basis, otherwise the consumer would buy elsewhere. He said that generally speaking a wholesale merchant sells to others for resale; that if he sells to a school or like user he might put that in his wholesale business; but if he is a retailer principally, he can do his wholesale business on his retail license, which is the way most automobile dealers operate. He agreed with the Roanoke assistant commissioner of revenue that the principal element in wholesale sales was volume and, he said, that the interpretation usually placed on § 58-304 of the Code by the State Tax Commissioner was that wholesale sales consisted of sales in wholesale quantity at wholesale prices.

"To sell by wholesale is to sell by large parcels, * *; to sell goods in gross to retailers, who sell to consumers. * * A sale at 'retail' and one at 'wholesale' are opposed to each other, one being a sale in small quantities, and the other in large quantities. * *" Black's Law Dict., 3d ed., p. 1844. To the same effect is Webster's Third New International Dict., p. 2611.

"There is a well-defined and clearly understood distinction between the words 'retail' and 'wholesale'; they are used in opposition

one to the other, one being a sale in large quantities, the other in small quantities. Whether the sale is one by retail or wholesale will depend upon the facts of the particular transaction. * *" *Kentucky Consumers Oil Co.* v. *Commonwealth*, 192 Ky. 437, 233 S.W. 892, 893; *Casebolt* v. *Kentucky-West Virginia Gas Co.*, 293 Ky. 178, 168 S.W. 2d 773. See also *People* v. *Cain*, 171 Mich. 279, 137 N.W. 159; *Hughes* v. *Pittsburgh*, 176 Pa. Super. 148, 106 A.2d 655; *Commonwealth* v. *Bay State Milling Co.*, 312 Pa. 28, 167 A. 307; *Associated Grocers of Alabama, Inc.* v. *Haden*, 271 Ala. 654, 127 So. 2d 624; *Fountain* v. *St. Joseph Water Co.*, 352 Mo. 817, 180 S.W. 2d 28; *Commonwealth* v. *Greenwood*, 205 Mass. 124, 91 N.E. 141; 77 C.J.S., Sales, § 1e., pp. 580-1.

The holding in *Roland Elec. Co.* v. *Walling*, 326 U.S. 657, 66 S. Ct. 413, 90 L. ed. 383, cited by petitioner, is not necessarily at odds with these definitions. The questions there were whether Roland's employees were within the coverage of sections 6 and 7 of the Fair Labor Standards Act of 1938, and if so, whether they were excluded from the Act because engaged in "any retail or service establishment." It was held that they were within the coverage and not so excluded. The court said that the language of the exclusion clause was capable of two interpretations, but when read in connection with its declared purpose, legislative history and administrative interpretation, it did not apply to Roland's employees. The opinion quotes Webster to the effect that in general usage "retail" means the sale of commodities in small quantities as opposed to "wholesale" and then states:

"In the suggested use of the word 'retail' as opposed to the word 'wholesale,' a distinction appears not merely between the size and volume of the sales but between types of purchasers. For example—" The examples then given are quotations from text writers to the effect that the distinguishing feature of the retail trade consists in selling merchandise to ultimate consumers, while wholesaling is said to cover sales " 'to a retailer, a wholesaler, or an industrial consumer so long as the purpose of the customer in buying such goods is to resell them in one form or another or to use them for business needs as supplies or equipment.' "

*McComb* v. *Deibert*, DC E.D. Pa., 117 F. Supp. 41, referred to by petitioner, followed *Roland* in construing the Fair Labor Standards Act but made the following finding of fact:

"It is a well-recognized concept in the automotive trade industry that sales of trucks in non-fleet quantities to persons for business or

commercial use and not for resale purposes have always been regarded as retail; sales of trucks for resale or in fleet quantities are not considered retail."

We are here concerned with the meaning of our own statute, § 58-304, which says that "wholesale merchant" as used therein means every merchant who sells to others for resale only (which petitioner does not claim to have done), or "who sells at wholesale to institutional, commercial or industrial users," which petitioner claims entitled him to operate under wholesale licenses for the years here involved.

The Commonwealth's auditor, as stated, testified that practically all of the petitioner's truck sales, to whomever made, were listed as wholesale. Petitioner's evidence does not show what sales of trucks were made to institutional, commercial or industrial users and what sales were made to individuals. It entirely failed to show that any such sales were wholesale transactions within the generally accepted meaning of that term. Petitioner's theory, as advanced by its accountant, was that any and all sales made to institutional, commercial or industrial users were made at wholesale.

Petitioner's contention would be correct if the words "at wholesale" were deleted from the statute so as to define a wholesale merchant as one "who sells to institutional, commercial or industrial users." But the 1956 amendment to the statute, Acts 1956, c. 663, inserted after the word "sells" the words "at wholesale" and thereby classified as a wholesale merchant only those who sell to such users at wholesale.

The evidence does not show that petitioner's truck sales were of that character and the judgment appealed from is accordingly

*Affirmed.*