**CIRCUIT COURT OF LOUDOUN COUNTY**

Luck Stone Corp.

v.

Loudoun County

February 3, 1992

Case No. (Law) 12188

BY JUDGE JAMES H. CHAMBLIN

This is a proceeding under Virginia Code § 58.1–3984 upon an application by Luck Stone Corporation ("Luck") to correct an allegedly erroneous assessment by the County of Loudoun of its Business, Professional and Occupational License Tax ("BPOL Tax") for the years 1986 through 1991. Counsel agreed to "bifurcate" this case so that the Court could first determine whether certain sales by Luck were at wholesale for purposes of the BPOL Tax. Counsel submitted pre-hearing memoranda, and the Court heard evidence and argument of counsel on January 13, 1992.

For the reasons hereinafter set forth, the Court finds that the sales by Luck at its wholesale price of stone to industrial, commercial, and institutional customers, the charges collected by Luck for the hauling of stone purchased from it and the interest income of Luck on two bank accounts outside of the County, are not subject to the County's BPOL Tax under Virginia Code § 58.1-3703(B)(5) and Chapter 840 (Business, Professional, and Occupational License Tax) of the codified Ordinance of Loudoun County.

The parties stipulated certain facts by the stipulation, a copy of which is attached (except for the copy of the ordinance referred to in paragraph 5 thereof). Luck owns and operates a quarry in Loudoun County. It extracts stone from the ground, processes it, and sells it in various shapes, sizes, grades, and volumes to its customers. For the years in question, Luck's customers were concrete manufacturers,

asphalt manufacturers and producers, spec home builders, custom home builders, general contractors, utility contractors, pipe manufacturers, government agencies, homeowners and farmers.

Forty to fifty percent of Luck's sales in Loudoun County from 1985 to the present were to concrete and asphalt manufacturers. It sold stone to home builders for such purposes as driveways, basement slabs, plumbing, drain fields, and drain tile around a house. It sold stone to subcontractors such as utility contractors for such purposes as storm drain lines and water and sewer lines. Luck's sales to farmers, government agencies, and homeowners constituted a very small percentage of its total sales in each year since 1985.

In each year from 1985 through 1991, approximately 80% of Luck's total sales from the Loudoun plant were made to its top thirty customers. See Plaintiff's Exhibit No. 2. Sales to these customers were typically of large quantities of stone (in the thousands of tons) for a price in the thousands of dollars for each sale.

Because of the very nature of its product and its being sold at the place of extraction, a very small percentage of the sales would be for personal use purposes. The vast majority of the sales would be to commercial customers, i.e., customers who use the stone for their business purposes as supplies, raw material, or equipment. Further by its very nature, such sales would overwhelmingly be in large quantities. Luck sets its prices for its various stone products by a price list that has been in existence for all the years in question in the form as those submitted in evidence. See Plaintiff's Exhibit No. 3A, 3B, 3C, and 3D. The price list has always provided: "For retail pricing, add $1.00 per ton."

Luck's policy for all the years in question was to charge the retail price only to those persons who used the stone for their personal purposes. The best example would be a homeowner who needed stone for a driveway. If the sale was to a commercial account, such as to a manufacturer, a contractor, a farmer for farming purposes, or a governmental agency, then the price on the price list was charged. Luck considers the price list price to be the wholesale price.

### Applicable Statutes and Ordinances

Under Virginia Code § 58.1–3703(B)(5), the County is prohibited from levying the BPOL Tax on a "person engaged in the business of severing mineral from the earth for the privilege of selling the sev-

ered mineral at wholesale at the place of severance . . . ." The Loudoun ordinance imposes the BPOL Tax based on the type of profession, trade, or occupation of the taxpayer. The County seeks to tax Luck based on the following ordinance provisions:

(1) On its retail sales under § 840.24 (Retail Merchants) which imposes the tax on a "person who sells goods, wares or merchandise at retail only and not for resale . . . ." In § 840.01(g), a "Retail Merchant" is defined as a "person who sells commodities, goods or articles, individually or in small quantities, directly to the consumer."

(2) On the hauling charges and interest income under § 840.17 (Business Service Occupations), which lists certain business service occupations, including "hauling or transfer," and on a general theory that "gross receipts" which forms the basis for BPOL taxation includes interest income allocated to the Loudoun plant by Luck's home office.

Section 840.26 defines a "wholesale merchant" as "any person who sells to retailers as set forth in § 840.24 for resale only and any person who sells to an institutional, commercial, or industrial user." This Court notes a conspicuous absence of the word "wholesale" in the ordinance definition of "wholesale merchant."

### Sales to Institutional, Commercial and Industrial Consumers

The County cannot impose its BPOL Tax on Luck to the extent that its business falls within the provisions of Virginia Code § 58.1–3703(B)(5) regardless of the provisions of the County ordinances or guidelines issued by the Department of Taxation. The County does not challenge that Luck is engaged in the business of severing minerals from the earth for the privilege of selling the severed minerals at the place of severance. The County takes the position that Luck's sales are retail sales and not sales "at wholesale" as required by Virginia Code § 58.1-3703(B)(5).

The word "wholesale" is not defined in Chapter 37, License Taxes, of Title 58.1 of the Code of Virginia. When the words of a statute are clear and unambiguous, judicial construction is not required. The Court must take the words as written and give them their plain meaning. *Brown v. Lukhard*, 229 Va. 316 (1985). When a statute is unambiguous, extrinsic legislative history may not be used. *Brown*, 229 Va. at 321.

Wholesale has a generally accepted definition. The Supreme Court of Appeals of Virginia recognized this in *Dickerson, Inc. v. Commonwealth*, when it quoted with approval a definition from Black's Law Dictionary:

> To sell by wholesale is to sell by large parcels . . . to sell goods in gross to retailers, who sell to consumers . . . A sale at "retail" and one at "wholesale" are opposed to each other, one being a sale in small quantities, and the other in large quantities . . . Black's Law Dict., 3d ed., p. 1844. To the same effect is Webster's Third New International Dict., p. 2611.

206 Va. 339, 341 (1965).

As recognized in *Dickerson*, whether the sale is one by retail or at wholesale will depend upon the facts of the particular transaction. 206 Va. at 342. In addition to considering the quantity of stone sold, a determination of whether a sale is at retail or at wholesale can depend upon price discount for a wholesale sale. *See, e.g., Wirtz v. Floridice Company*, 381 F.2d 613, 615 (6th Cir. 1967). Under the evidence presented, almost all of Luck's sales are in large quantities at a discounted price.

In *Dickerson*, the Supreme Court of Appeals acknowledged the approach to distinguishing retail from wholesale taken by the United States Supreme Court in *Roland Electrical Company v. Walling*, 326 U.S. 657, 66 S. Ct. 413 (1946), where the following factors were considered:

> (1) A retail sale means a sale of commodities in small quantities;
> (2) A wholesale sale is made to a purchaser activated solely for a profit or business motive in making the purchase as opposed to a retail sale to a purchaser purchasing to satisfy his personal wants through the personal use of the commodity purchased; and
> (3) A retail sale is a sale to the ultimate consumer whereas a wholesale sale is one to a person whose purpose in buying the goods is to resell them in one form or another or to use them for business needs as supplies or equipment.

66 S. Ct. at 421.

Applying the foregoing to Luck's sales, the sales to purchasers who purchase the stone for their own business needs are sales at

wholesale. Therefore, a sale to a pipe, concrete or asphalt manufacturer is at wholesale as conceded by the County. The stone is a raw material needed to produce the concrete or asphalt. It is likewise a sale at wholesale to a home builder or a general contractor. Whether the stone be for a driveway, a basement slab, a drain field, or drain tile, it is used in the builder's or contractor's business and is, in effect, "resold" when the stone incorporated in the finished house is sold or delivered to the homeowner. The same can be said for the utility contractor when the stone is purchased for water and sewer lines or storm drain lines. It is purchased and used in the utility contractor's business and is, in effect, "resold" to the general contractor. It is also a sale at wholesale when stone is sold to a governmental agency or to a farmer for farming purposes because it is used in the business of the governmental agency or the farmer. Of course, it can only be a sale at wholesale if sold at the wholesale price as opposed to the higher retail price.

Luck, therefore, is exempt from the Loudoun BPOL Tax on its sales at its wholesale price (as opposed to its published retail price) to its commercial or business customers, i.e., customers who buy the stone for their own business purposes such as for resale, for use as a raw material for a product manufactured or produced by them or for use in the performance of their for-profit business. Such customers represent 99% of Luck's customers. A retail sale would, on the other hand, be one for the retail price regardless of the customer or to a customer for his purely personal purposes and use, e.g., stone purchased by a homeowner for his driveway.

The above would be my opinion on what sales can be considered as wholesale for purposes of the County BPOL Tax under the state statute. However, I need to go further because of the way the County has chosen to define "retail merchant" and "wholesale merchant" in the BPOL Tax Ordinance. Because the County has no authority to impose the BPOL Tax on Luck for wholesale sales, it could only impose the tax if Luck meets the definition of a "retail merchant" under § 840.01(g). It does not because Luck does not sell its "commodities, goods or articles," i.e., the stone, "individually or in small quantities." Furthermore, the County has chosen to define a "wholesale merchant" in § 840.26 as a "person who sells to an institutional, commercial or industrial consumer." Therefore, under the County's own ordinance, any sale by Luck to an institutional, commercial, or

industrial consumer is a sale at wholesale and does not subject Luck to the BPOL Tax.

Despite what I consider to be the clear language of the state statute and the BPOL Tax Ordinance, the County asserts that Luck's sales to all but those customers who use the stone to manufacture or produce another product are retail sales for a variety of reasons.

The County apparently follows a publication of the Virginia Department of Taxation entitled "Guidelines for Local Business, Professional and Occupational License Taxes" dated January 1, 1984, in administering its BPOL Tax. Despite the State Tax Commissioner's Certification dated December 6, 1991, the "Guidelines" by its own language on page ii is for use in "administering the taxes imposed *under the authority of § 58-266.1 of the Code of Virginia.*" (Emphasis mine.) Section 58-266.1 was repealed as of January 1, 1985. Further, the definitions of "wholesaler" or "wholesale" (see pages 3 and 11 of the "Guidelines") contained therein include the word "wholesale" which is conspicuously absent in the County's definition of "wholesale merchant" in § 840.26. The County has offered no authority for the proposition that a state guideline can add something to an ordinance that is not there. Even if the "at wholesale" language is added, almost all of Luck's sales would still be at wholesale for the reasons stated above.

The County's argument that a sale is one at retail if the customer is the ultimate consumer or user of the stone is not persuasive. The County cites *Commonwealth v. Pounding Mill Quarry Corporation*, 215 Va. 647 (1975), as support for its position, but this case is a sales tax case, and it was decided under the statutes then pertaining to the Virginia Sales Tax.

The County also argues that the BPOL Tax should apply on Luck's sales to contractors because of the definition of contractor as found in the aforesaid "Guidelines" and in Virginia Code § 58.1–610 (located in the chapter on Retail Sales and Use Tax), and a Virginia Sale and Use Tax Regulation (§ 630–10–27) that "real property" as used in a definition of contractor includes "highways." Again, I am not persuaded because the County is taking a sales tax principle (sales to contractors are retail sales and subject to sales tax) and applying it to a license tax. The County's only authority for guidelines in one tax area being applicable to another tax area is *Seaboard Finance Corporation v. Commonwealth*, 185 Va. 280 (1946). I have read this

case, and I cannot see its having anything to do with this issue. It is a corporate income tax refund case. If it is cited for the rule that administrative construction of a statute is entitled to great weight, then it is not applicable here because there is no evidence of any long-standing administrative construction of the statute and ordinance involved here acquiesced in by the taxpayer (Luck). 185 Va. at 287. For the same reasons, I cannot find any authority for the County's using State Retail Sales and Use Tax Regulations in administering a county license tax.

The County places great emphasis on Judge Annunziata's opinion in *K-B Corporation v. County of Fairfax*, Circuit Court of Fairfax County, Law No. 100509 (Ruling from bench on September 4, 1991; order entered November 19, 1991). I am not persuaded by her opinion for the main reason that the issue in *K-B Corporation* is not the exact same issue presented in this case. In *K-B Corporation*, the applicant was a retailer subject to the Fairfax County BPOL Tax, regardless of whether its sales were retail or wholesale. It merely sought to have the tax imposed on it as a wholesale merchant because of the identity of its purchasers. Judge Annunziata merely found that the applicant failed to meet its burden of proof that it was a wholesale merchant. This case involves an overriding state statute and considerably more evidence about the nature of the sales involved than merely the identity of the purchasers.

It is completely irrelevant to this case that other quarries in the County may be paying the BPOL Tax or that other counties have not attempted to impose a BPOL Tax on Luck at its other quarries throughout the Commonwealth.

### Hauling Charges

The charge for hauling stone is passed through by Luck to its customers. The charge to the customer equals the amount paid to the hauler by Luck. I do agree with the County that this is a fee charged to a customer for a business service, but it is not a business service provided by Luck. The service is provided by the hauler. Luck sells stone. It is not in the business of hauling stone. The haulers are independent contractors and are not subject to Luck's control. A hauler does not even have to haul if he does not want to haul. Luck merely provides a means for hauling the stone when a customer does not have the desire or means to do so.

I am not persuaded by either *Savage v. Commonwealth*, 186 Va. 1012 (1947), or *City of Alexandria v. Morrison-Williams Associates*, 223 Va. 349 (1982). In *Savage* the state motor vehicle gross receipts tax was found to apply to all of a carrier's gross receipts even if received by the carrier for the transport of cargo on equipment hired by it. Savage was in the business of hauling freight, and he was found liable for the tax even if he did not use his own equipment to haul the freight. Here Luck is not in the business of hauling stone. In *Morrison-Williams*, it was simply held that an advertising agency must pay a tax based upon its gross receipts in the amount reported as gross income to IRS without any deduction for amounts paid to media sources. In this case, Luck does not declare the hauling charges as income and deduct the fees paid to the haulers for income tax purposes.

Under § 840.17, the individual haulers are certainly subject to the BPOL Tax based on the fees received through Luck. Subjecting Luck to the BPOL Tax for the same fees would constitute double taxation.

Luck is not subject to the BPOL Tax on account of the hauling charges.

### Interest Income

The County seeks to impose a BPOL Tax on Luck for income not earned or paid in Loudoun County but interest earned on money deposited in bank accounts in other jurisdictions. The County does not even seek to impose the tax on interest earned on the sales receipts from the Loudoun quarry but on a percentage of the interest earned on all the receipts from all of Luck's quarries over the state based on an internal bookkeeping allocation by Luck. The BPOL Tax is based upon the business of the taxpayer in the County. The means by which the County attempts to impose the tax bears no relation to income earned by Luck in the County.

Under § 840.02, the BPOL Tax is "imposed upon the privilege of doing business . . . in the County." The amount of the tax is based upon a business' gross receipts. Under § 840.01(a), the term "gross receipts" includes "the gross receipts from all sales or services rendered or activities conducted within the County." There is no evidence that the interest the County attempts to tax is earned in the County or arose out of activities in the County.

Luck is not subject to the BPOL Tax based upon the interest income.