## CIRCUIT COURT OF FAIRFAX COUNTY

Fairfax County

v.

DataComp Corp.

February 22, 1995

Case No. (Law) 128829

BY JUDGE STANLEY P. KLEIN

Plaintiff, County of Fairfax, brought this action pursuant to Va. Code § 58.1-3953 demanding payment of taxes, penalties, and interest charges allegedly owed by the Defendant DataComp Corporation on delinquent Business, Professional, and Occupational License (BPOL) taxes for tax years 1989 through 1993. Plaintiff claimed that as of December 15, 1994, the Defendant owed $7,103.16 in taxes, late filing penalties, late payment penalties, and interest assessed under a Wholesale Merchant License pursuant to Fairfax County Code § 4-7-26 and $1,333.26 in taxes, late filing penalties, late payment penalties and interest assessed under a Repair/Service License pursuant to Fairfax County Code § 4-7-23.

Fairfax County Code § 4-7-26 imposes an annual license tax on the privilege of wholesale merchant occupations at a rate of four cents for each $100.00 of gross purchases for the year. Fairfax County Code § 4-7-23 imposes an annual license tax on the privilege of repair service occupations at a rate of eighteen cents for each $100.00 of gross receipts for the year.

Defendant filed an Answer and Grounds of Defense along with an Application to Correct Erroneous Assessment and Refund of Taxes, claiming

that it is not liable for the claimed BPOL taxes, because, as a manufacturer, it qualifies for the exemption from license taxes provided under Va. Code § 58.1-3703(B)(4).

The Court initially took this case under advisement to determine (1) whether the Defendant qualifies as a manufacturer for purposes of Va. Code § 58.1-3703(B)(4), and (2) if so, whether the Defendant is exempt from the BPOL taxes assessed under both the Wholesale Merchant license and the Repair/Service license. Based upon what the Court determined was an honest misunderstanding between counsel as to the scope of the parties' pre-trial stipulations, it invited the parties to put on further evidence, post-trial, on the additional issue of whether the defendant was selling its products "at wholesale" for the purposes of Va. Code § 58.1-3703(B)(4) during the tax years in question. The Court has fully considered the evidence and arguments set forth at trial and at the post-trial hearing as well as those arguments set forth in the parties' trial briefs and post-trial memoranda.

## I. *Factual Background*

DataComp is in the business of producing and selling personal computers, file servers, and computer parts. In 1988, DataComp opened a "manufacturing plant" in Fairfax County to fulfill its obligation under a contract with the Department of Labor. Since then, the Defendant has continued to contract with and provide computer networks to various government agencies, labor unions, law firms, and "re-sellers." In producing its computers, DataComp acquires various component parts such as motherboards, power switches, cabling, and brackets from original equipment manufacturers (OEMs). These individual parts are tested to ensure quality and compatibility with FCC standards. DataComp technicians then assemble and integrate these parts into a final product in accordance with contract specifications. This process includes the soldering, taping, and connecting of these materials by trained employees.

DataComp has principally relied on the defense that it qualifies for the exemption under Virginia Code § 58.1-3703(B)(4), which provides that no county shall levy any license tax "[o]n a manufacturer for the privilege of manufacturing and selling goods, wares, and merchandise at wholesale at the place of manufacture." It is the County's position that DataComp's business activity does not constitute manufacturing for purposes of this exemption but consists of mere assembly of ready-made parts. Addition-

ally, the County has argued that DataComp is not selling computers "at wholesale" as required by the statute.

The County also argued at trial that DataComp should be barred from contesting the tax assessments for 1989 through 1990 by Va. Code § 58.1-3984 which provides, in part, that:

> [a]ny person assessed with local taxes aggrieved by any such assessment, may, unless otherwise specially provided by law, within three years from the last day of the tax year for which any such assessment is made, or within one year from the date of the assessment, whichever is later, apply for relief to the circuit court of the county or city wherein such assessment was made.

The Court disagrees. Pursuant to Va. Code § 58.1-3955, the Court has the power to order exoneration of any taxes that have been erroneously charged, for which collection is sought pursuant to § 58.1-3953. In such cases, the Court is limited only by the five-year statute of limitations imposed upon the collection of local taxes as set forth in § 58.1-3940.

## II. *Burden of Proof*

When a taxpayer petitions the Court to correct an erroneous assessment, the assessment is presumed to be correct and the taxpayer bears the burden of proving that it is "otherwise invalid or illegal." Va. Code § 58.1-3984; *Fairfax County v. Leasco*, 221 Va. 158, 160 (1980); *Norfolk & Western Ry. Co. v. Commonwealth*, 211 Va. 692 (1971); *Shaia v. City of Richmond*, 207 Va. 885, 892, 893, n. 7 (1967) ([E]ven if the assessor is unable to come forward with evidence to prove the correctness of the assessment, this does not impeach it since the taxpayer has the burden of proving the assessment erroneous.) Likewise, in claiming an exemption from taxation, the taxpayer bears the burden of proving its qualification. *Board of Supervisors of Fairfax County v. Group Health Association*, 243 Va. 296, 299 (1992); *County of Henrico v. Management Recruiters*, 221 Va. 1004 (1981). The exemption statute is to be construed strictly against the taxpayer and when susceptible of two constructions, one granting an exemption and the other not granting it, the Court should adopt a construction denying the exemption. *Solite Corp. v. King George Co.*, 220 Va. 661, 662 (1980) *citing Commonwealth v. Community Motor Bus.*, 214 Va. 155, 157 (1973); *See also Webster v. Dept. of Taxation*, 219 Va. 81, 84 (1978) (Construction of a statute by a state official charged with its administration, although not binding on the Court, is entitled to great weight.) Thus,

the burden falls on defendant DataComp to prove, by a preponderance of the evidence, that it qualifies as a manufacturer under Va. Code § 58.1-3703(B)(4), and that the taxes assessed by the County were therefore erroneous.

### III. *Is DataComp a Manufacturer?*

Determining whether DataComp qualifies as a "manufacturer" for purposes of Va. Code § 58.1-3703(B)(4) involves a two part analysis. The Court must first consider whether some of DataComp's business activities constitute "manufacturing" as defined by the Virginia Supreme Court, and second, whether these activities, if deemed to be manufacturing, meet the test of substantiality. *County of Chesterfield v. BBC Brown Boveri*, 238 Va. 64 (1989).

In characterizing DataComp's activities, the definition of manufacturing should be liberally construed, consistent with the public policy of Virginia to encourage manufacturing in the Commonwealth. *County of Chesterfield*, 238 Va. at 69, *citing Prentice v. City of Richmond*, 197 Va. 724 (1956).

In *Prentice*, the Court adopted a three-prong test for determining whether a business's activities constituted "manufacturing." *Prentice*, 197 Va. at 729. In conducting its analysis, a court should look to the existence of (1) original material referred to as raw material; (2) a process whereby raw material is changed; and (3) a resulting product which, by reason of being subjected to the processing, is different from the original raw material. *Id.* at 843. The business activity in question in *Prentice* was the buying, killing, cleaning, chilling, and sale of poultry. The Court held that since there was no change or transformation of the live poultry into an article or product of a substantially different character, Prentice was not a manufacturer and was subject to the City tax. *Id.* at 730-31.

The County has suggested that the first prong of this test should be strictly construed to require the use of *natural* raw materials in manufacturing. The Court disagrees. Such a limitation would not only be contrary to the stated public policy of this Commonwealth but would also be inappropriate in this age of advanced technology. If the Court were to adopt the County's restrictive definition of raw materials, General Motors would not qualify as a manufacturer as it merely assembles and integrates parts including pre-fabricated steel. The focus instead should principally be upon the transformation of "new material into an article or product of substantially different character." *County of Chesterfield*, 238 Va. at 69,

*citing Solite Corp. v. King George Co.*, 220 Va. 661 (1980). In holding that the business of extracting and processing sand and gravel did not constitute manufacturing, the *Solite* Court stated:

> [a]lthough the washing, the screening, and the grading remove impurities and segregate the various grades of sand and gravel, these procedures do not substantially alter the character of the sand and gravel . . . . *The mere blending together of various ingredients, in the absence of a transformation into a product of substantially different character, is not manufacturing.*

*Solite*, 220 Va. at 665, *citing Ohio Ferro-Alloys Corp. v. Kosydar*, 34 Ohio St. 2d 113, 116-17, 296 N.E.2d 533, 536 (1973); *Commonwealth v. Tetley Tea Co.*, 421 Pa. 614, 616-17, 220 A.2d 832, 834 (1966) (emphasis added).

> Manufacture implies a change, but every change is not manufacture, and yet every change in an article is the result of treatment, labor and manipulation. But something more is necessary. . . . There must be transformation; a new and different article must emerge, "having a distinctive name, character or use."

*Solite*, 220 Va. at 663, (*quoting Anheuser-Busch Brewing Association v. United States*, 207 U.S. 556, 562 (1908)).

The evidence at trial showed that DataComp's production of its computers involved the transformation and integration of various components into a final product of substantially different character. The processes involved many steps including integrating parts into a motherboard and soldering and wiring materials into the system. Robert Kime, president and sole owner of DataComp, testified that the production of each computer involved at least fourteen soldering points, approximately four on the CPU and a minimum of ten on the monitor. He also testified that the process involved integrating control panel switches, disk drives, controller cards, wires, and cables, and other computer parts which could not function as a computer without the technical expertise of the employees who transform these computer "raw materials" into an integrated system which performs the desired tasks. The process described clearly involved more than "[t]he mere blending together of various ingredients." *Solite*, 220 Va. at 665.

The Court finds that this transformation process constitutes manufacturing under § 58.1-3703(B)(4) of the Virginia Code.

### IV. *The Test of Substantiality*

Although a business will not lose its status as a manufacturer for tax purposes merely because it conducts some non-manufacturing activities, it will only be so classified if it proves that those portions of its business constituting manufacturing are substantial, when compared to its total activities. *County of Chesterfield*, 238 Va. at 70. In determining whether the manufacturing portion of a business is substantial, a court must examine the following factors:

> the manufacturing component's financial receipts, its proportion of the total corporate income, the percentage it comprises of the total capital investment, the number of employees working in the manufacturing component as compared with the total number of employees, or the ratio of manufacturing activities to the entire business.

*Id.* at 71.

Robert Kime, president of DataComp, testified at trial that well over half of its business activity during the relevant years consisted of the production of computers and monitors pursuant to government contracts. Kime further testified that approximately 80-90% of its revenue between 1989 and 1993 came from its government contracts. Based upon the evidence presented, the Court finds that the manufacturing component of the Defendant's business satisfies the substantiality test.

### V. *"At Wholesale" Requirement*

While a definition of the term "wholesale" is not provided in Chapter 37 of Title 58.1 of the Virginia Code, the Virginia Supreme Court has interpreted this term in *Dickerson G.M.C., Inc. v. Commonwealth*, 206 Va. 339 (1965). In addition, the Fairfax County Code defines a "wholesale merchant" under Article 7 of Chapter 4, relating to BPOL taxes to include "[e]very person who sells to retailers . . . for resale only, and all persons who sell to institutional, commercial or industrial consumers." § 4-7-26(a).

It is undisputed that the County taxed DataComp as a "wholesale merchant" during each of the relevant years. DataComp contends that this determination precludes the County from arguing that DataComp was not selling "at wholesale" during the relevant years. This argument is flawed, however, in that it assumes, without authority, that one classified as a

"wholesale merchant" under Fairfax County Code § 4-7-26 would necessarily satisfy the requirement of "selling at wholesale" under Va. Code § 58.1-3703(B)(4). Although such a characterization by the County may be *evidence* that the defendant is in fact selling at wholesale, it is not conclusive on the issue.

Whether a sale is characterized as "by retail" or "by wholesale" depends upon the facts of the particular transaction. *Dickerson*, 206 Va. at 342 (1965). In *Dickerson*, the Court defined wholesaling as sales "to a retailer, a wholesaler, or an industrial consumer so long as the purpose of the customer in buying such goods is to resell them in one form or another *or to use them for business needs as supplies or equipment.*" *Id. citing Roland Electrical Co. v. Walling*, 326 U.S. 657 (1945) (emphasis added). In *Roland Electric*, the United States Supreme Court distinguished retail sales from wholesale transactions by weighing the following factors:

(1) A retail sale means a sale of commodities in small quantities; *Roland Electric*, at 673;

(2) A wholesale sale is made to a purchaser activated solely for a profit or business motive in making the purchase as opposed to a retail sale to a purchaser purchasing to satisfy his personal wants or those of his family through the personal use of the commodity purchased; *Id.* at 674;

(3) A retail sale is a sale to the ultimate consumer whereas a wholesale sale is one to a person whose purpose in buying the goods is to resell them in one form or another or to use them for business needs as supplies or equipment. *Id.* and

(4) Wholesale sales are to trading establishments, institutions, industrial, commercial and professional users *and to governmental bodies. Id.*

*See also Luck Stone Corp. v. Loudoun County*, 28 Va. Cir. 37 (Loudoun Cir. Ct. 1992), *citing Wirtz v. Floridice Co.*, 381 F.2d 613 (6th Cir. 1967). In Judge Chamblin's well reasoned opinion in *Luck Stone*, the Court rejected the same argument advanced by the County herein that any sale to an end user is at retail. *Id.* at 42.

Kime testified that between 1989 and 1993 the main purchaser of computers from the company was the U.S. Department of Labor. Other government contracts were also awarded during this time from the Naval Surface Warfare Department, NASA, the U.S. Army Corp of Engineers, the Library of Congress, and the Government Printing Office. Kime testified that the computers were sold to these agencies for use as supplies or equipment.

It cannot be seriously questioned that nearly all of DataComp's sales during the relevant tax years satisfied these definitions of "at wholesale," as virtually all of the sales that were not to re-sellers were either to agencies of the federal government or other institutions such as labor unions or large corporations, which used DataComp's products for business needs as supplies or equipment. *Dickerson* at 342. Accordingly, the Court holds that DataComp is entitled to the statutory exemption for that portion of the County's claim relating to the taxes, penalties, and interest on DataComp's wholesale merchant license.

## VI. *The Repairs/Service License*

Relying on our Supreme Court's opinion in *County of Chesterfield*, DataComp asserts that once this Court determines that DataComp is entitled to the statutory exemption for its sales activities, it is necessarily also exempt for its repair activities. DataComp misreads *County of Chesterfield*. The exemption flows only to those business activities that are "ancillary" to its manufacturing business. *County of Chesterfield* at 72. DataComp presented no evidence as to the relationship, if any, between the business it conducts under its wholesale merchant license and the business it conducts under its repairs/service license. As it bears the burden of proving that it is entitled to an exemption for its repairs/service activities, *Solite Corp., supra,* the Court holds that it is not entitled to an exemption for those activities, and the County is entitled to a judgment for the taxes, penalties, and interest due under that repair/service license.

## VII. *Conclusion*

For the reasons set out in this letter opinion, the County is granted a judgment against DataComp solely for that portion of its claim relating to the taxes arising from the repairs/service license. DataComp's Application for reassessment is dismissed.